## SALT LAKE CITY *v.* HOLLISTER, Collector.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF UTAH.

Argued April 19, 22, 1886.—Decided May 10, 1886.

A municipal corporation engaged in the business of distilling spirits is subject to internal revenue taxation under the laws of the United States, whether its acts in that respect are or are not *ultra vires.*

A corporation is responsible for acts done by its agent, whether *in contractu* or *in delicto,* in the course of its business and of their employment, as an individual is responsible under similar circumstances. *Philadelphia, Wilmington & Baltimore Railroad Co.* v. *Quigley,* 21 How. 202, affirmed.

The distinction pointed out between actions arising on contracts made by a corporation in excess of its corporate powers, and actions against corporations for injuries caused by tortious acts done by its agents in the course of its business and of their employment, in excess of its powers.

*Mr. Franklin S. Richards* for plaintiff in error. *Mr. Benjamin Sheeks* and *Mr. J. L. Rawlins* were with him on the brief.

*Mr. Solicitor General* for defendant in error.

Mr. Justice Miller delivered the opinion of the court.

This suit was instituted by the city of Salt Lake to recover of Hollister the sum of $12,057.75 illegally exacted by him as collector of internal revenue for the district of Utah from the city for a special tax upon spirits alleged to have been distilled by said city, and not deposited in the bonded warehouse of the United States by plaintiff as required by law.

Plaintiff alleges that, under threat of selling sufficient property of the city to pay said tax, it paid the sum demanded under protest, appealed to the Commissioner of Internal Revenue, who failed and neglected to make any decision or to refund the money, and after six months' waiting this suit was brought.

To the petition the defendant made the following answer:

"Now comes the defendant in the above-entitled cause, O. J. Hollister, and for answer to the plaintiff's complaint admits that the plaintiff is a public municipal corporation created and

organized under and by virtue of the laws of the Territory of Utah, and that it has continued to be such a corporation since its organization in February, 1850, and that the defendant was at the time mentioned, and as alleged in plaintiff's complaint, and still is, the acting United States collector of internal revenue for the district of Utah.

"Defendant admits that in June, A.D. 1876, the United States Commissioner of Internal Revenue set down to and assessed against the plaintiff a gallon tax of ten thousand seven hundred and sixty dollars upon spirits distilled by said plaintiff at various times between the 2d day of March, A.D. 1867, and the 26th day of August, A.D. 1868, and not deposited in the bonded warehouse of the United States by the plaintiff, as required by law, but denies that said gallon tax was illegally or erroneously set down to or assessed against the plaintiff by said Commissioner of Internal Revenue, and avers that the plaintiff, during all the time for which said assessment was made, was actually engaged in distilling, producing, and dealing in, as distiller, said spirits so assessed, and said assessment of said gallon tax was made upon distilled spirits actually produced by the plaintiff, and upon which plaintiff had not paid the gallon tax required by law, said spirits not having been deposited in the bonded warehouse of the United States by the plaintiff, as required by law, but taken from said distillery by the plaintiff, after having been produced and distilled as aforesaid, and sold by said plaintiff, and the proceeds of said sale turned into the treasury of the plaintiff.

" Said plaintiff, during all the time it operated said distillery, and especially from said 2d day of March, 1867, to said 26th day of August, 1868, was distilling and producing spirits as aforesaid, and receiving and appropriating the benefit arising therefrom.

"Defendant further alleges that the plaintiff, during the time mentioned in plaintiff's complaint, regularly reported and paid to the collector of internal revenue of the United States the gallon tax due upon a quantity of spirits distilled and produced by plaintiff, but that plaintiff neglected to report all of the spirits it actually produced and distilled, and for and upon

which the said gallon tax was due and owing to the United States, and that the tax so assessed as aforesaid is the tax due upon the spirits produced and distilled in excess of the amount so reported by said plaintiff, and upon which no tax was ever assessed and collected up to the time of the payment mentioned in plaintiff's complaint, and hereinafter stated.

"Defendant, answering, admits that the list containing the said gallon tax assessed by the Commissioner of Internal Revenue of the United States was placed in the hands of this defendant as collector of internal revenue.

"And defendant alleges that said plaintiff having engaged in the business of distilling and producing spirits as aforesaid, and said tax having been assessed by the Commissioner of Internal Revenue as aforesaid and placed in the hands of the defendant, as collector of internal revenue, for collection, it became and was his duty as such collector to collect said tax.

"Defendant denies that he knew that said gallon tax, so assessed as aforesaid, was erroneous and illegal, and avers that said tax was legal and correct, and was assessed and collected because plaintiff was liable to said tax.

"Defendant admits that he did threaten to seize and sell the property of plaintiff to pay said tax, as alleged by plaintiff, and that the plaintiff on the 14th day of August, 1877, paid the defendant the amount of the gallon tax, with interest which had accrued thereon from the date of said assessment, but for what reason plaintiff paid defendant said gallon tax defendant is not advised, and upon that subject has no knowledge, information, or belief, and therefore cannot answer."

A demurrer to the answer was overruled, and the plaintiff refusing to plead further, a judgment was rendered for the defendant, which was affirmed on appeal to the Supreme Court of the Territory.

It will be perceived that this demurrer admitted that the plaintiff, The City of Salt Lake, had been for a period of about eighteen months engaged in the business of distilling and producing spirits and selling the same, and placing the proceeds of the sale in its treasury. That during this time the plaintiff made regular reports as to the quantity produced and paid the

tax on the amounts so reported. But that while it thus operated said distillery, it failed and neglected to report all the spirits which it produced, and the tax assessed and collected, and which the present suit is brought to recover back, was for the spirits of which no report was made.

The Commissioner of Internal Revenue having assessed plaintiff for these distilled spirits and placed the assessment in the hands of defendant, he, as a means of collecting the tax, did threaten to seize and sell property of plaintiff, whereupon plaintiff paid the sum mentioned.

It would seem that this unqualified admission that the city was actually engaged in the business of distilling spirits liable to taxation, and replenishing her treasury with the profits arising from the operation, ought to be a justification of the officer who collected the tax due for the spirits so distilled. And this argument is all the stronger, since the city acknowledged its liability as a distiller by paying voluntarily the tax due on the larger part of the spirits produced.

But while the city does not deny the *actual* fact of distillation, and of fraudulent returns by it, it denies the whole affair by argument. It says, that, though it is very true the city did distil spirits, did sell them, and did receive the money into its treasury, it cannot be held liable for this because it had no legal power to do so. Its want of corporate authority to engage in distilling is to be received as conclusive evidence that it did not do so, while by the pleading it is admitted that it did. Because there was no statute which authorized it as a city of Utah to distil spirits, it could engage in this profitable business to any extent, without paying the taxes which the laws of the United States require of every one else who did the same thing.

If the Territory of Utah had added to its other corporate powers that of making and selling distilled spirits, then the city would be liable to the tax, but, because it had no such power by law, it could do it without any liability for the tax to the United States or to any one else.

It would be a fine thing, if this argument is good, for all distillers to organize into milling corporations to make flour, and proceed to the more profitable business of distilling spirits,

which would be unauthorized by their charters or articles of incorporation; for they would thus escape taxation and ruin all competitors.

It is said that the acts done are not the acts of the city, but of its officers or agents who undertook to do them in its name. This would be a pleasant farce to be enacted by irresponsible parties, who give no bond, who have no property to respond to civil or criminal suits, who make no profit out of it, while the city grows rich in the performance. It is to be taken as a fair inference on this demurrer that all that the city might have done was done in establishing this business. The officers who, it is said, did this thing, must be supposed to have been properly appointed or elected. Resolutions or ordinances of the governing body of the city directing the establishment of the distillery and furnishing money to buy the plant, must be supposed to have been passed in the usual mode. Everything must have been done under the same rules and by the same men as if it were a hospital or a town hall. If the demurrer had not admitted this, it could no doubt have been proved on an issue denying it.

But the argument is unsound that whatever is done by a corporation in excess of the corporate powers, as defined by its charter, is as though it was not done at all. A railroad company authorized to acquire a right of way by such exercise of the right of eminent domain as the law prescribes, which undertakes to and does seize upon and invade, by its officers and servants, the land of a citizen, makes no compensation, and takes no steps for the appropriation of it, is a naked trespasser, and can be made responsible for the tort. It had no authority to take the man's land or to invade his premises. But if the governing board had directed the act, the corporation could be sued for the tort, in an action of ejectment, or in trespass, or on an implied assumpsit for the value of the land. A plea of *ultra vires*, in this case, would be no defence.

The truth is, that, with the great increase in corporations in very recent times, and in their extension to nearly all the business transactions of life, it has been found necessary to hold them responsible for acts not strictly within their corporate

powers, but done in their corporate name, and by corporation officers who were competent to exercise all the corporate powers. When such acts are not founded on contract, but are arbitrary exercises of power in the nature of torts, or are quasi-criminal, the corporation may be held to a pecuniary responsibility for them to the party injured.

This doctrine was announced by this court nearly thirty years ago in a carefully prepared opinion by Mr. Justice Campbell in the case of *Philadelphia, Wilmington and Baltimore Railroad Co.* v. *Quigley,* 21 How. 202. That was an action for libel by Quigley against the company for the publication of a letter addressed to the company in the course of an investigation by its directors in regard to the conduct of some of its subordinates. This letter contained statements in regard to plaintiff's skill and capacity as a mechanic very disparaging in that respect. This, with much other testimony, was printed and published by the board of directors, and the court decided that the corporation could be held liable for the publication. The argument that only the individuals who ordered the publication could be made responsible was urged then as here, but the court held that if it was a libel the corporation was responsible for it in damages.

It was also insisted that the existence of malice was a necessary element in the action for libel, and that the abstract entity which constituted a corporation was incapable of malice, which could only be predicated of the officers who ordered the publication. This was likewise overruled, and it was held that if the act implied malice, the corporation was liable for it.

The whole question was very fully considered. We can here do no more than make a single extract from the able opinion. After examining the authorities, it was said: " With much wariness, and after close and exact scrutiny into the nature of their constitution, have the judicial tribunals determined the legal relations which are established for the corporation by their governing body and their agents, with the natural persons with whom they are brought into contact or collision. The result of the cases is that for acts done by the agents of a corporation, either *in contractu* or *in delicto,* in the course of

its business and of their employment, the corporation is responsible as an individual is responsible under similar circumstances. At a very early period it was decided in Great Britain, as well as in the United States, that actions might be maintained against corporations for torts; and instances may be found in the judicial annals of both countries of suits for torts arising from the acts of their agents, of nearly every variety."

In the case of *Reed* v. *Home Savings Bank*, 130 Mass. 443, 445, the bank was held liable to an action for malicious prosecution. The court said: "It is too late to discuss the question, once much debated, whether a corporation can commit a trespass, or is liable in an action on the case, or subject generally to actions for torts as individuals are. The books of reports for a quarter of a century show that a very large proportion of actions of this nature, both for nonfeasance and for misfeasance, are against corporations. . . . And, by the great weight of modern authority, a corporation may be liable, even where a fraudulent or malicious intent in fact is necessary to be proved, the fraud or malice of its authorized agents being imputable to the corporation; as in actions for fraudulent representations, for libel or for malicious prosecution." Many authorities are cited in support of this proposition, which may be found on page 445 of the report of the case.

Another well considered case in which a corporation is held liable for malicious prosecution is that of *Copley* v. *Grover and Baker Sewing Machine Co.*, 2 Woods, 494.

It is said that Salt Lake City, being a municipal corporation, is not liable for tortious actions of its officers.

While it may be true that the rule we have been discussing may require a more careful scrutiny in its application to this class of corporations than to corporations for pecuniary profit, we do not agree that they are wholly exempt from liability for wrongful acts done, with all the evidences of their being acts of the corporation, to the injury of others, or in evasion of legal obligations to the State or the public. A municipal corporation cannot, any more than any other corporation or private person, escape the taxes due on its property, whether acquired legally or illegally, and it cannot make its want of legal author-

ity to engage in a particular transaction or business a shelter from the taxation imposed by the Government on such business or transaction by whomsoever conducted. See *McCready* v. *Guardians of the Poor of Philadelphia*, 9 S. & R. 94.

It remains to be observed, that the question of the liability of corporations on *contracts* which the law does not authorize them to make, and which are wholly beyond the scope of their powers, is governed by a different principle. Here the party dealing with the corporation is under no obligation to enter into the contract. No force, or restraint, or fraud is practised on him. The powers of these corporations are matters of public law open to his examination, and he may and must judge for himself as to the power of the corporation to bind itself by the proposed agreement. It is to this class of cases that most of the authorities cited by appellants belong—cases where corporations have been sued on contracts which they have successfully resisted because they were *ultra vires.*

But, even in this class of cases, the courts have gone a long way to enable parties who had parted with property or money on the faith of such contracts, to obtain justice by recovery of the property or the money specifically, or as money had and received to plaintiff's use. *Thomas* v. *Railroad Co.*, 101 U. S. 71; *Louisiana* v. *Wood*, 102 U. S. 294; *Chapman* v. *Douglass County*, 107 U. S. 348, 355.

The judgment of the Supreme Court of Utah Territory is

*Affirmed.*