## FRAUDULENT REPRESENTATIONS BY A NATIONAL BANK AS A GROUND FOR DAMAGES.

Common Pleas Court of Defiance County.          · :

THE FIRST NATIONAL BANK OF DEFIANCE v. WILLIAM A. KEHNAST ET AL.

Decided, October, 1910.

*Counter-Claim Against a National Bank—Based on Fraudulent Repre-*
*sentations and Practices—Ultra Vires Acts by a Bank—Estoppel—*
*Statute of Limitations.*

1. One who has been deprived of his property by reason of the machina-
tions of the officers of a national bank, acting apparently within the
scope of their duties but acting fraudulently, whereby the bank
obtained an advantage, may enforce his claim against the bank for
damages as for money had and received.

2. Where it is averred that the endorsement and guaranty sued on by
the bank was fraudulently obtained, by reason whereof the bank
secured a benefit, and it is expressly denied that the defendants
either authorized the endorsement and guaranty or knew anything
about it, the bank is estopped from pleading the statute of limita-
tions against a counter-claim of defendants where the bank's officers,
by promises not to sue on the bank's claim and conduct calculated to
induce a reasonable man to forego a threatened suit, secure delay
until the statutory period has run against the counter-claim and
then sue on the bank's claim.

*Julian H. Tyler* and *Newbegin & Newbegin*, for the demurrer.
*Wheeler & Bently* and *Harris & Shaw*, contra.

MATHERS, J.

Heard on demurrer.

The plaintiff brings its action against the defendants to re-
cover on certain promissory notes set out in the petition, aggre-
gating in amount $16,690, which notes it claims were executed
by the Nightengale Woolen Mills Company, a partnership, and
before they came due were, for valuable consideration, endorsed,
transferred and the payment thereof guaranteed by the Defi-
ance. Woolen Mills Company, also a partnership composed of
the defendants.

The defendants, after interposing several defenses, by way of counter-claim seek to recover of the plaintiff the sum of $28,-262.78, which they claim to have lost by reason of certain fraudulent representations and practices on the part of the bank. The bank demurs to the cross-petition on the ground that it does not state facts sufficient to constitute a counter-claim, and also because such counter-claim is barred by the statute of limitations. The other grounds of the demurrer challenge the character of the pleadings, but the court is of the opinion that inasmuch as the cross-petition is founded upon matters arising out of the transaction, set forth in the petition as the foundation of the plaintiff's case, or connected with the subject of the action, it may be denominated a counter-claim; and the other grounds just referred to are unimportant to determine.

The demurrer admits the facts well pleaded. It was contended at the argument that the bank could not be bound in the particulars complained of, which, among others, related to fraudulent representations concerning the character of the Defiance Woolen Mills Company, which company and its property and business the defendants claim were owned by the bank, because the bank had no power to own or operate woolen mills, and that if any fraudulent representations were made the bank could not be bound by them, as the officers of the bank and not the bank itself must have made them and they were outside the scope of the authority of such officers.

It is true that a national bank can not legally engage in any other business than banking, and that, as was held in *Bank* v. *Kennedy*, 167 U. S., 361, it is not estopped from asserting that a transaction outside its powers is *ultra vires*. It was held in *Merchants National Bank* v. *Wehrmann*, 202 U. S., 295, that a national bank can not become the absolute owner in satisfaction of a debt of shares represented by transferrable certificates in a partnership formed to purchase, improve, divide into lots and sell a leasehold. So that there may be some doubt whether the bank in this case had the power to take over and continue the business of the Defiance Woolen Mills Company, notwithstanding the statute, U. S. Rev. St., 5137, provides that national

banking associations may purchase, hold and convey real estate which has been conveyed to them in satisfaction of debts previously contracted in the course of their dealing. For it does not appear that the business of the Defiance Woolen Mills and the property used therein consisted of any real estate; nor does it appear, except inferentially, that the bank took over the business of the Defiance Woolen Mills in satisfaction of debts owing to it which had been previously contracted. It may be, therefore, that that part of the counter-claim of the defendants which is founded upon the alleged false representations made by the bank concerning the profitable character of the Defiance Woolen Mills, does not afford a predicate for an action, though this point is not now decided, because it is not necessary to decide it in order to determine the question raised by this demurrer, and also because the court will not presume that the bank committed an unlawful act, but on the contrary will assume that it was rightfully the owner of the property referred to and had the power to dispose of it. And if the bank had the power to dispose of it, it would be held to the same rules of good faith with respect to negotiations concerning its disposition that an individual would be.

That perhaps it had power to take over the property of the Defiance Woolen Mills Company as security for debts previously contracted, or to avoid or reduce losses on that account, finds support in the decision of *First National Bank of Charlotte* v. *National Exchange Bank of Baltimore,* 92 U. S., 128. And if the property would be more valuable as a going concern, perhaps no valid objection could be made to taking over the business as an entirety and procuring its continuance until it could be disposed of, though the bank could not become a partner with others in the mangement of the business so as to make it liable for the debts of the partnership (*Merchants National Bank* v. *Wehrmann, ante*). In the former case the Supreme Court rather fully expounds the statutes conferring power on national banks and says that in and about the conduct of their business, as respects avoiding losses, they may do whatever natural persons could do in like circumstances, citing *Fleckner*

v. *Bank*, 8 Wheat., 851, where it was held a prohibition against trading and dealing was nothing more than a prohibition against engaging in the ordinary business of buying and selling for profit, and did not include purchases resulting from ordinary banking transactions. In *First National Bank of Charlotte* v. *The National Exchange Bank of Baltimore, ante,* it was held, syl. 2:

"In the honest exercise of the power to compromise a doubtful debt owing to a bank or one owing by a bank, stocks may be taken by a bank with a view to their subsequent sale or conversion into money so as to make good or reduce an anticipated loss. Such a transaction does not amount to a dealing in stocks."

But the gravamen of the complaint of defendants is that the bank, being the owner of the property and business of the Defiance Woolen Mills Company, a partnership, represented to defendants that it, the bank, was desirous of selling such property and business, which was profitable; that all the product had been and would be taken by the Nightengale Woolen Mills Company, which was a responsible firm of which the bank's president was the controlling partner; that it always had paid and would pay promptly for such product; that one Jarvis, who had managed the Defiance Company's business while operated by and for the bank, was a capable and experienced man and the bank would procure him to go into partnership with the defendants in the reorganized Defiance Woolen Mills Company; that defendants had no other means of knowing of the character of the business and solvency of either the Defiance Company or the Nightengale Company, and relied on the representations of the bank; that they entered into the plan proposed by the bank, which contemplated Jarvis as manager, and that the bank was thoroughly cognizant of the powers of said Jarvis and knew of the limitations on his powers as manager, and especially knew that he had no authority whatever to enter into for the firm any contract of indorsement, guaranty, or suretyship, or to involve the firm or the partners in any liability by any such contract; that the Nightengale Company was not paying promptly, when the defendants took over the property and business of the Defiance Company, but was largely indebted to the bank for

the latter company's product theretofore, through the form of the Defiance Company partnership, but in reality by the bank, sold to the Nightengale Company; that the latter company had long been unable to meet its obligations, as the bank well knew but fraudulently concealed from defendants with intent to mislead and defraud them; that after defendants had entered into said partnership and arrangement with said Jarvis as manager, a large amount of product of the partnership business was sold and delivered to the Nightengale Company, which made and executed its notes therefor, which were, by a secret arrangement and agreement between the bank and said Jarvis, indorsed by him with the name of the partnership, the Defiance Woolen Mills Company, and over said indorsement the waiver and guaranty there written were placed by said Jarvis, and the notes taken by the bank and since held by it except certain ones which were discounted with other banks and which latter notes defendants were compelled to and did pay, the notes held by the bank being the ones sued on in the petition, it being averred that those held by other banks were taken by them in due course and without notice of any infirmity; that the bank, in order to conceal the alleged fraudulent transactions from the defendants entered in the pass-books of the partnership items that made it appear the Nightengale Company had paid cash, and otherwise concealed the facts from defendants and misled them by false representations with respect to the indebtedness of the latter company and with respect to the account of the partnership, and the indorsements and guaranties made by Jarvis, as aforesaid, and concealed the existence of said notes, so indorsed and guarantied; that the income of the Nightengale Company, from the sales of products so furnished them by the Defiance Company, was not used to pay their obligations to the bank but that the avails of the discounts aforesaid (inferentially), and by credits on account of the notes sued on, so fraudulently negotiated and guarantied, were applied to said old indebtedness of the Nightengale Company to the bank; that thereby the profits which would otherwise have accrued to the defendants were fraudulently diverted to the payment of the bank's claims, and

defendants were defrauded of them and of the money which they put into the business. It is further averred that defendants did not discover the fraud until the Nightengale Company became insolvent in August, 1901; that they then threatened to sue the bank, but that the latter agreed with them not to make any claim against them on account of the notes sued on in the petition, though retaining them for presentation to the trustee of the Nightengale Company for the payment of dividends on them as evidences of claims, if they would forbear such suit, by reason whereof they did not begin any action against the bank.

It can not be successfully claimed, if these alleged fraudulent practices obtained, that the bank was not the beneficiary of them, or that the officers of the bank were acting outside the scope of their authority. For, while it is true that a national bank is a corporation having only such powers as are expressly conferred, and those that are incidental and necessary to effectuate the express powers, yet I think it fundamental that the capacity to do an act involves the capacity to do it wrongly and that, unless an operation is actuated and executed wholly by some mechanical device, operating independently of the human will, it involves the power to act fraudulently. To hold differently would be to abrogate the entire doctrine of torts by corporations; and that corporations are capable of tortious conduct, within the scope of their conferred powers, it hardly needs the citation of authority to decide. The courts have been careful to keep national banks within the scope of their powers, and to limit their liability to such scope to the end that stockholders may not be saddled with responsibilities they never contemplated; that the public be protected; and that those dealing with them may neither defraud nor be defrauded; but nowhere has it been decided that the "divinity that doth hedge a king" shall be extended to national banks and the conclusion reached that, like the king, they can do no wrong but redress be obtained only from their ministers. Even conceding that the bank could not be held for the strictly tortious conduct of its officers, though acting within the apparent, though not real, scope of their authority, yet there can be no doubt but that a

person who has been deprived of his property by reason of the machinations of the officers of a national bank, acting within the apparent scope of their ordinary duties, but acting fraudulently, whereby the bank obtains an advantage, such person, so defrauded, may sue the bank as for money had and received. The reasoning of the opinion in *Salt Lake City* v. *Hollingsworth,* 118 U. S., 256, to which the court refers counsel, is pertinent and illuminating.

As to the question of estoppel, while it is true that it was held in *U. S.* v. *Dunn,* 6 Pet., 51, that the president and cashier of a national bank had no authority to bind the bank by a representation to an endorser of a note that his liability would be merely nominal, yet in that case the endorser entered into the contract knowingly and impressed upon the paper certain legal characteristics which the court held it would not only involve setting aside the law merchant to release him from, but would also involve an invasion of the rule of evidence inhibiting the contradiction of a written instrument by parol testimony to permit him to deny. In the case at bar, it is averred that the endorsement and guaranty sued upon were fraudulently procured by the plaintiff, by reason of which it received a benefit, and it is expressly denied that the defendants either authorized such endorsement and guaranty, or that they knew anything about it. In a question between the parties to an alleged fraudulent transaction such as set out in the cross-petition, where the rights of innocent holders are not involved, considerations which led to the decision in the Dunn case have no place. And the case of *Martin et al* v. *Webb et al,* 110 U. S., 7, is abundant authority for holding that the conduct on the part of the bank's officers set out in the petition, which is relied upon to estop the bank from pleading the statute of limitations, sufficiently binds the bank in this behalf.

The court is of the opinion that the demurrer is not well taken and it will be overruled. An exception may be noted.