(73 Misc. Rep. 122.)

### DILLUVIO v. CITY OF NEW YORK et al.

(Supreme Court, Trial Term, Queens County.    July, 1911.)

1. STREET RAILROADS (§ 13*)—POWERS OF MUNICIPAL CORPORATION—OPERATION OF RAILROAD.

   Greater New York Charter (Laws 1901, c. 466) §§ 595, 601, relating to the construction, repair, maintenance, and operation of bridges by the municipality, do not authorize the officers of the city to operate a railroad on the Queensboro Bridge across the East River.

   [Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 13.*]

2. MUNICIPAL CORPORATIONS (§ 733*)—TORTS—ULTRA VIRES ACTS.

   Where the New York City commissioner of bridges under authority attempted to be conferred by the board of estimate and apportionment constructed and operated an electric railroad on the Queensboro Bridge upon which the public were invited to accept transportation, the fares of which were paid into the city treasury, a verdict for a passenger injured through the negligence of an employé of the department of bridges

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

operating one of the cars will be set aside as against the city on the ground that it is contrary to law.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1547–1549; Dec. Dig. § 733.*]

3. MUNICIPAL CORPORATIONS (§ 732*)—TORTS—ULTRA VIRES ACTS.

An act by a municipal corporation outside of the authority and power conferred by statute, being ultra vires, cannot be made the basis of an action for damages, whether its employés directed the act, or it was done without express direction.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1546; Dec. Dig. § 732.*]

Action by Pietro Dilluvio against the City of New York and another. Motion to set aside a verdict for plaintiff, and for a new trial. Granted.

Andrew C. Morgan, for plaintiff.

Archibald R. Watson (Edward S. Malone, of counsel), for defendant City of New York.

James L. Quackenbush (George B. Hanavan, of counsel), for defendant New York & Q. C. Ry. Co.

STAPLETON, J. The plaintiff recovered a verdict against both defendants. The defendants moved to set aside the verdict and for a new trial under section 999 of the Code of Civil Procedure, upon exceptions and because the verdict was excessive and otherwise contrary to the evidence and contrary to law. The verdict should stand as against the defendant New York & Queens County Railway Company. The only question raised upon motion by the defendant the city of New York, which compels more considerate attention, is that it is, in no event, liable, and that the motion on its part for a nonsuit should have been granted.

It is conceded that the board of estimate and apportionment of the city of New York, by a resolution, attempted to authorize the construction and operation of a railroad propelled by electricity upon the Queensboro Bridge, which spans the East River in the city of New York; that the commissioner of bridges constructed and operated that railroad; that the public were invited to accept transportation upon the railroad for compensation; and that the fares were paid into the treasury of the city of New York. It appears by evidence sufficient to warrant the jury in so finding that the plaintiff became a passenger upon that railroad, and while such passenger was injured through the negligence of an employé of the department of bridges operating one of the cars on that railroad.

[1, 2] The defendant the city of New York advances the proposition that there was no authority in the board of estimate and apportionment to authorize the construction and operation of a railroad on the Queensboro Bridge and no authority in the bridge commissioner to construct and operate the road, and that the city cannot be held liable in an action to recover damages for personal injuries, because of the lack of authority and notwithstanding its reception of the prof-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

its of the unauthorized acts of its officers. I am of the opinion that the concurrence of authority requires me to assent to that proposition.

Sections 595 and 601 of title 4 of chapter 466, Laws of 1901, Greater New York Charter, are the only express provisions of law authorizing the construction, repair, maintenance, management, and operation of bridges by the municipality. These sections read as follows:

"Sec. 595. The commissioner of bridges shall have cognizance and control: (1) Of the management and maintenance of the New York and Brooklyn Bridge. (2) Of the operation of the railroad on the New York and Brooklyn Bridge. (3) Of the collection of fares and of tolls on the New York and Brooklyn Bridge. (4) Of the construction, repair, maintenance and management of all other bridges, that may at any time hereafter be constructed in whole or in part at the expense of the city of New York, or that may be acquired by said city, which extend across the waters of a navigable stream, or have a terminus in two or more boroughs. (5) Of the construction, repair, maintenance and management of all other bridges that are or may be in whole or in part a public charge, not included in public parks, or within the control of a president of a borough, within the territory of the city of New York. The board of commissioners established by chapter seven hundred and eighty-nine of the laws of eighteen hundred and ninety-five is hereby abolished, and all its powers and duties are hereby devolved upon the commissioner of bridges of the city of New York. The engineering and clerical force of said board is hereby transferred to the department of bridges of the city of New York; provided, however, that nothing herein contained shall prevent the commissioner of bridges from abolishing unnecessary offices or positions, or shall in any way limit his powers of removal as determined by this act. (6) Of the construction, repair, maintenance and management of all tunnels that hereafter may be constructed in whole or in part at the expense of the city of New York or that may be acquired by said city which extend across the waters of a navigable stream or have a terminus in two or more boroughs; provided, however, that nothing in this section contained shall in any way limit or affect the powers now possessed by the board of rapid transit railroad commissioners."

"Sec. 601. Upon the appointment of the commissioner of bridges, the respective offices of the trustees of the New York and Brooklyn Bridge shall be and they hereby are declared abolished and all the powers and duties vested in and devolved upon said trustees of the New York and Brooklyn Bridge by any law or statute shall, so far as they are consistent with and conformable to the provisions of this act, be devolved upon the commissioner of bridges of the city of New York and upon the board of aldermen, and they shall in all respects exercise such duties and perform such powers, subject, however, to the provisions, directions and limitations of this act."

It is obvious that there is no expression in those sections which authorizes the operation of a railroad on any other bridge than the New York and Brooklyn Bridge. It is equally plain, by reference to chapter 789 of the Laws of 1895 and of the laws establishing the powers and duties vested in and devolved upon the trustees of the New York and Brooklyn Bridge, to wit, section 7, c. 300, Laws of 1875, and section 1980 of chapter 410 of the Laws of 1882, that there is no express power given to the officers of the municipality to operate a railroad upon the Queensboro Bridge. It is not within the common and ordinary meaning of the words, "construction, maintenance and management" of a bridge across navigable waters to construct and operate a railroad thereon. This statement gathers security from the history that, when the Legislature determined it to be in the public interests to authorize the operation of such a railroad, it did so explicitly.

[3] ·In Smith v. City of Rochester, 76 N. Y. 506, 509, the court said:

"The doctrine is well settled that municipal corporations are within the operation of the general rule of law that the superior or employer must answer civilly for the negligence or want of skill of an agent or servant in the course of their employment, by which another is injured. It is essential, however, to establish such a liability that the act complained of must be within the scope of the corporate powers, as provided by charter or positive enactment of law. If the act done is committed outside of the authority and power of the corporation as conferred by statute, the corporation is not liable, whether its officers directed its performance, or it was done without any express direction or command. It is ultra vires and cannot be made the basis of an action for damages for that reason. These general principles are fully sustained by the authorities. See Dillon on Mun. Corp. §§ 766, 767, and authorities cited."

And again, at page 511:

"No reported case sustains the principle that when the common council of a municipal corporation exceed the powers conferred by the charter of the city they represent, by using the property of the city, as was done in this case, for purposes not recognized by law, that the corporation is answerable for negligence in the management of such property. Such a rule would place in the hands of the members of the common council of a municipal corporation a power to create liabilities of the taxpayers which is without any precedent or authority of law, and which might be liable to great abuse."

In Hoggard v. Mayor and City Council of Monroe, 51 La. Ann. 683, 25 South. 349, 44 L. R. A. 477, which was an action to recover damages for an injury sustained by the next of kin through the death of the person killed by the negligence of the employés of the city operating a ferry, the operation of which was not authorized by law; the court said:

"Plaintiffs herein make before us the broad contention that the city of Monroe is bound to them independently of any authority in it, either general or special, to operate ferries. That liability flows from the fact itself that the city did carry on a ferry, and that as resulting from that fact injury was done to plaintiff's son. They urge that it is monstrous to say that the city of Monroe should operate a ferry freed from all responsibility for the manner in which it was conducted, but this argument involved an assumption of fact that 'the city' did operate such a ferry. It may be true that one was conducted under authority of the common council in the name of the city, but, unless the corporation itself was authorized to establish a ferry, it cannot be said that the act of the council was the act of 'the city.' The council represents the city only in respect to matters which fall within the corporate powers of the corporation. Beyond this, its acts are ultra vires."

Adjudications to the same effect were had in Betham v. Philadelphia, 196 Pa. 302, 46 Atl. 448, and in Cooper v. Mayor and Council of City of Athens, 53 Ga. 638. See, also, City of Albany v. Cunliff, 2 N. Y. 165, 172, 178; Stoddard v. Village of Saratoga Springs, 127 N. Y. 261, 267, 27 N. E. 1030; O'Donnell v. City of Syracuse, 184 N. Y. 1, 9, 76 N. E. 738, 3 L. R. A. (N. S.) 1053, 112 Am. St. Rep. 558; Tilford v. Mayor, 1 App. Div. 199, 201, 37 N. Y. Supp. 185, affirmed 153 N. Y. 671, 48 N. E. 1107.

The plaintiff advances, in support of his position that the city is liable, a decision of the Supreme Court of the United States in Salt Lake City v. Hollister, 118 U. S. 256, 6 Sup. Ct. 1055, 30 L. Ed. 176.

The same authority was presented in the case of Hoggard v. Mayor, etc., supra. The Supreme Court of Louisiana answered it:

"We think the court in that case did not intend to go, nor did it in fact go, to the extent which plaintiffs assert.

"The case was presented and passed upon, under an exceptional state of facts. The city of Salt Lake was not brought into court upon a claim made against it based on either contract or tort, but it was in court as a plaintiff seeking to recover money which it alleged it had been improperly and illegally made to pay, but under protest.

"The city, in bringing its suit, fell under the operation of the rule that the right to resist payment of a claim when advanced is much broader than is the right when money has been paid under it to recover it back. Independently of this, the Supreme Court held that the law made the imposition of a tax in favor of the government follow as the immediate and direct result of the fact itself of the carrying on of a particular business without reference to who carried it on or under what circumstances it was done.

"The city of Salt Lake had, without authority, carried on a distillery. Called on to pay a tax, it made the payment, but under protest, and sought afterwards to have the sum so paid reimbursed to it. The court held that the claim so presented was not well founded, and in the course of its opinion declared and showed that the acceptance of the doctrine contended for was against public policy in tax matters, as it would lead to the destruction of the tax system."

The motion to dismiss the complaint at the close of the plaintiff's case on the part of the city of New York should have been granted, and the exception to the denial of that motion is valid. The motion to set aside the verdict is granted because the verdict was contrary to law.

Motion granted.