CLARK et al. v. BOSTON-CONTINENTAL NAT. BANK et al.

No. 3149.

Circuit Court of Appeals, First Circuit.
June 25, 1936.

Emmanuel Kurland, of Boston, Mass. (David Stoneman, of Boston, Mass., on the brief), for appellants.

Brenton K. Fisk, of Boston, Mass. (Andrew J. Aldridge, of Boston, Mass., on the brief), for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an appeal from a judgment of the District Court for Massachusetts of April 8, 1936, in favor of the defendants. It is an action at law for deceit and was brought by the plaintiffs, copartners doing business as H. C. Wainwright & Co., against the defendant national bank and its receiver, based on misrepresentations made by the president of the bank prior to its closing and the appointment of the receiver.

The declaration, after setting out that the plaintiffs were residents of Massachusetts and the defendant bank a national banking association with a usual place of business in Boston, alleged in substance that on December 16, 1931, the defendant bank was closed and did not thereafter open; that on the following day the Comptroller of the Currency took possession of the bank for the purpose of winding up its affairs and appointed a receiver of the bank; that the defendant Deitrick succeeded to the office of receiver, qualified as such, and now has possession of the books, records, and assets of the bank and is acting as receiver; that for some time prior to the spring of 1931, the bank was hopelessly insolvent; that the bulk of its assets were frozen; that its liabilities greatly exceeded its assets; that it was unable to meet its obligations as they matured and at that time its capital stock was absolutely worthless; that in the spring of 1931 its position became more precarious; that this precarious financial condition was known to the officers and directors of the bank; that at that time (the spring of 1931) the Comptroller of the Currency informed the bank that its bond account had been impaired to the extent of $300,000 and the bank would have to raise that sum to make good that impairment or be closed; that, under these circumstances, Ragan, the president of the bank, acting under the authority of the board of directors, set out to raise the sum of $300,000 and requested the plaintiff firm to put $300,000

into the defendant bank; that Ragan, while negotiating with the plaintiffs for the investment of said sum, as president of said bank, being thereto duly authorized and acting in behalf of said bank, represented to the plaintiffs that the bank was perfectly solvent, that its loans were sound, that its assets were fairly liquid, that its business was good and its prospects were excellent, that its embarrassment was in the depreciation of the value of its bonds; that he further represented that the national bank examiner requested that the depreciation in the value of its bonds be made up and that a $300,000 guaranty fund be established as against said depreciation and, if it was established, the requirement of the national bank examiner would be fulfilled and the bank would be permitted to carry on its business unmolested; that the bank's assets were in excess of its liabilities and were ample to take care of all the obligations as they should mature and that there was a substantial equity behind its capital stock and that said stock was an excellent investment; that the plaintiffs might safely loan money or extend credit upon the security of said stock; that all of said representations were false, fraudulent, and intended to deceive the plaintiffs and induce them to rely thereon, to advance money to said bank, and to make loans or extend credit upon the shares of its capital stock as security, so that the knowledge of such loans and extensions of credits might be disseminated in the financial community and the price at which the stock of said bank was selling in the market might be kept at an artificially high level in excess of its true value; that Ragan, as president, knew that the representations were false, fraudulent, and calculated to deceive and intended that the plaintiffs should rely and act thereon; that he knew the bank was hopelessly insolvent and that the depreciation of its bonds was but one of the many insuperable difficulties which the bank faced and that the bolstering up of the bond values by the said guaranty fund would not cure the insolvent condition of the bank, but that he, nevertheless, deliberately and willfully made the false representations, expecting and intending that the plaintiffs be defrauded of such moneys as they might be willing to advance in reliance upon said representations, and which they might be willing to loan upon the security of shares of the capital stock of the defendant bank; that,

thereafter, during the year 1931, Ragan, as president of the bank and acting on its behalf, continued to represent to the plaintiffs the financial condition of said bank and continued to represent that the bank was in a sound financial condition and that its loans were good and its assets fairly liquid; that there was a substantial equity behind the capital stock of the bank, and that the stock was an excellent investment, and it would be perfectly safe to advance money or extend credit upon the security of the shares of the capital stock of the bank; that these representations were false and fraudulent and were made for the purpose of keeping the plaintiffs in ignorance of the true condition of the bank and to induce them to make more loans upon the security of the shares of the capital stock of the defendant bank and to leave undisturbed such loans as they made on such security, in order that the market price of said stock might be maintained; that the plaintiffs believed the representations made and continued to be made to them by the defendant bank and acting in reliance thereon, and continuing to rely thereon, advanced considerable sums during the year 1931 to one Irving Usen upon the security of 175 shares of the capital stock of the bank, to one Joseph Balter on the security of 5,000 shares and to the Merchants Finance Company on the security of 1,000 shares of the capital stock of said bank; that, by reason of the falsity of said representations, the plaintiffs were unable to secure the payment of said loans; and that since the closing of the bank the receiver brought suit against the plaintiffs upon an assessment made on account of said stock and that the liability of the plaintiffs on account of said assessment has been satisfied by a compromise approved by the court, all to their damage, as they say.

The defendants demurred to the declaration. The court sustained the demurrer on the ground that the declaration did not state a cause of action, and entered the judgment from which this appeal is taken.

Two questions are raised in this case: (1) Whether a corporation may be held for the false representations made by its directors or under their authority; and (2) whether, if it may be held liable therefor, the plaintiffs, as judgment creditors of an insolvent bank, having paid the as-

sessments levied against them as stockholders, may participate ratably with other creditors in a distribution of the assets of the bank in the hands of the receiver.

In this case it is alleged that the president of the bank made the false representations here relied upon, "acting under the authority of the board of directors" and "being thereto duly authorized and acting in behalf of the bank"; that the "representations were false, fraudulent and intended to deceive the plaintiffs and induce them to rely thereon, * * * and to make loans or extend credit upon the shares of its capital stock as security, so that the knowledge of such loans and extensions of credit might be disseminated in the financial community and the price at which the stock of said bank was selling in the market might be kept at an artificially high level in excess of its true value."

If the false representations made by the president of the bank, under the authority of its directors, can be said to have been made in the course of its business and for its benefit, then it has been held that the false representations are those of the corporation whether they are in excess of its corporate powers or not. Salt Lake City v. Hollister, 118 U.S. 256, 260, 261, 6 S.Ct. 1055, 30 L.Ed. 176; Hindman v. First National Bank (C.C.A.) 98 F. 562, 48 L.R.A. 210; Id. (C.C.A.) 112 F. 931, 57 L.R.A. 108. The false representations, as alleged in the declaration, were made not only to deceive the plaintiffs and to induce them to rely thereon and to make loans and extend credit upon the shares of the capital stock of the bank, but to maintain and keep up the market value of its stock, all in the course of the bank's business and for its benefit. It was so held in National Exchange Co. of Glasgow v. Drew, 2 Macq.H.L.Cas. 103, where the purpose of the false representations of the company's manager was to endeavor "to appreciate its stock." This case is cited with approval in Philadelphia, Wilmington & Baltimore Railroad Co. v. Quigley, 21 How. 202, 211, 16 L. Ed. 73.

We are therefore of the opinion that the declaration states a cause of action against the bank.

As to the second question it appears from the allegations of the declaration that the plaintiffs' claims were fixed liabilities of the bank at the time it was declared insolvent, and that the plaintiffs have paid the assessments levied against them as stockholders. In this situation we see no reason why the plaintiffs should not participate ratably with other creditors in the distribution of the bank's assets in the hands of the receiver. It was so held in Salter v. Williams (C.C.A.) 244 F. 126.

The judgment of the District Court is vacated, and the case is remanded to that court for further proceedings not inconsistent with this opinion, with costs to the appellants in this court.