## CITY NATIONAL BANK OF NORMAN, OKLA., v. BOARD OF ED., CITY OF NORMAN, et al.

No. 28236.   Jan. 17, 1939.

Rehearing Denied March 14, 1939.

Williams, Cowan & Benedum and M. M. Thomas, for plaintiff in error.

Sylvester Grim, for defendant in error Board of Education.

John E. Luttrell, Thurman & Thurman, Thos. H. Owen, and Lynn Bullis, Jr., for defendants in error Oscar McCall, United States Fidelity & Guaranty Company, and the Western Casualty & Surety Company.

CORN, J. This is an appeal from a judgment of the district court of Cleveland county, wherein the board of education of the city of Norman sued the City National Bank of Norman, the county treasurer of Cleveland county, the Liberty National Bank of Oklahoma City. Oscar McCall, as school board treasurer, the United States Fidelity & Guaranty Company, and the Western Casualty & Surety Company as defendants.

The surety companies filed answers and cross-petitions, and have filed cross-petitions in error in this court. By reason of the trial court's finding that they were made secondarily liable, the allegations as to the county treasurer and the Liberty National Bank can be disregarded in view of the final disposition of the case. For the purposes of this appeal we are concerned only with the City National Bank of Norman and the board of education, and shall refer to them as they appeared in the trial court.

The facts are substantially as follows: McCall was elected school board treasurer with the understanding he should not actually perform the duties of the treasurer, but that these would be taken care of by the defendant bank. This the bank did during the period from July 1, 1932, to June 30, 1934, Standley, assistant cashier of the bank, being placed in charge.

Defendant admitted receiving deposits of school board money amounting to $121,356.79. An audit of plaintiff's books at the close of

the fiscal year of 1933-34 revealed a shortage of $14,463.69 in the sinking fund account, and the plaintiff sued the above-named defendants to recover this amount.

The case was tried to the court, and at the conclusion of the testimony defendant's demurrer to plaintiff's evidence was overruled. The court then made findings of fact that: McCall had exercised no control over plaintiff's money, but left complete control in the hands of Standley, designated by the defendant bank to handle the affairs; money had been credited to board of education sinking fund, and such were trust funds; Standley listed $29,147.35 worth of warrants in form of sinking fund investments and $14,683.66 of this amount was regularly retired during 1933-34; of the $14,463.69 shortage, $6,312.23 represented a payment of sinking fund money for which plaintiff received nothing; $8,159.46 was represented by warrants held by the defendant, but which really belonged to the school district.

Thereupon the trial court concluded, as a matter of law, that plaintiff should recover of the defendant the amount sued for, and decreed a lien upon securities defendant had pledged to secure repayment of funds deposited with it; defendant bonding companies and McCall were secondarily liable, contingent upon plaintiff's satisfying its judgment from defendant bank.

From this judgment defendant has appealed, offering ten assignments of error, incorporated into and presented under three propositions. The first two of these propositions deal with the sufficiency of the evidence and alleged errors of the trial court in overruling defendant's demurrer to plaintiff's evidence. For the sake of brevity the arguments directed against the sufficiency of the evidence may well be considered together.

Defendant admitted receiving the school district money for deposit, but alleged same was paid out on lawful orders of plaintiff. In his findings the trial court found that the $29,147.35 in warrants, held July 1, 1933, in the sinking fund, were purchased with sinking fund money, and the audits showed disbursements of that amount.

The auditor's report of July 1, 1934, accounts for $6,312.23 of such shortage, although at the close of the fiscal year on June 30, 1933, Standley listed the warrants, of which this amount ($6,312.23) was a part, as warrants held for investments as property of the plaintiff. Then, September 20,

1933, Standley drew a check for $6,312.23 on the fund but, instead of being payable to the sinking fund to retire warrants held there, it was made payable to defendant, supposedly to pay for warrants which were previously included in the list offered by Standley to the auditor as being held for investment.

The conclusion arising from this is inescapable. The warrants had to be paid for once before they could have come into Standley's hands to be listed in his statement of $29,147.35 and held for the sinking fund. Especially is this true in view of the fact that the particular warrants listed as being included in the check to the bank were among those going to make up the account of warrants held as of July 1, 1933.

The trial court further found that of the shortage $8,159.46 was represented by warrants held by defendant which were, in reality, property of plaintiff. Defendant contends the bank took these warrants in the regular course of business. However, we feel the evidence amply justifies the finding by the trial court that these warrants were the property of the plaintiff.

The auditor's report shows all warrants were in Standley's hands and proper disbursements made therefor on July 1, 1933. On July 1, 1934, the records disclosing disbursements for these warrants were the same as on July 1, 1933, but $8,159.46 in warrants purchased with sinking fund money were in possession of the defendant, allegedly through the due course of business.

The foregoing is revealed by the audit and it is improbable the taking of the $8,159.46 could have been accomplished without a sale of these warrants to defendant by Standley. Neither could these transactions have been carried out had it not been negotiated by one who was an officer in the defendant bank. The possibilities as to the transaction are legion and it is unnecessary to speculate upon the actual method followed in juggling the accounts. However, the evidence is fully sufficient to show perpetration of a fraud, and that the $8,159.46 in warrants claimed by defendant as taken in the due course of business are, in reality, the property of the plaintiff.

In view of all the evidence, we cannot conclude otherwise than that the trial court was entirely correct in determining the shortage in the two amounts set out heretofore was from the plaintiff's funds and was received by defendant. Hence, the conclusion must be that the trial court properly overruled defendant's demurrer to

plaintiff's evidence and that such evidence amply sustains the judgment.

We are next confronted with the argument urged by defendant that no liability can attach to the bank for the amount of the shortage, inasmuch as there was no fraudulent conduct evidenced on defendant's part, or that defendant had any knowledge of Standley's fraud.

We are aware of, and recognize the propriety of, the rule as announced by cases defendant cites, to the effect that knowledge possessed by an agent doing business for his principal is imputable to the principal on the presumption the agent will communicate such knowledge as his duty requires. We are also familiar with the exception to this rule that where the agent **acts for himself as well as his principal,** then the agent's interest is such as to make it certain he would not communicate his knowledge to the principal and no knowledge can be imputed to the principal. See 21 R. C. L. sec. 24, p. 843.

The facts in the case at bar do not permit application of this rule. Defendant admits, in fact urges, that Standley was acting in a dual capacity, and says when acting within his authority as an officer of the bank his acts bound the bank, but when acting as agent for the school treasurer his acts bound the plaintiff. From this defendant contends Standley never acted for the defendant in handling plaintiff's account, and defendant is therefore not to be held liable, since it received no benefits and did not ratify his acts.

Supporting this argument defendant cites and relies upon cases from this court, and other jurisdictions, to the effect that where an officer of a bank, while purporting to act in that capacity, engages in transactions without the scope of his delegated powers, and so obtains property of another, of which his bank has no knowledge and received no benefit, the bank is not liable.

Defendant wanted plaintiff's account. Whether defendant solicited McCall to seek election as treasurer is immaterial, but it is material and indisputable that the bank desired plaintiff's account and, of its own volition, took steps to secure it. The manner in which defendant procured the account is plain and undisputed. In return for the privilege of serving as depository of school funds the defendant agreed to take care of the matter for the treasurer, McCall.

Neither was it agreed that Standley should serve the plaintiff; defendant only agreed to take care of the treasurer's functions, without agreeing to designate any particular officer of the bank to handle McCall's duties. Knowing the law nowhere provides for a deputy treasurer, defendant took upon itself the position of administering the duties of the treasurer and had complete charge.

Having voluntarily assumed this position, the defendant, without any direction from plaintiff or the real treasurer, designated Standley to handle the affairs of the position it had assumed. Standley handled everything, there is no dispute as to this, **but** he discharged these duties, **not as an agent of McCall, but as agent of the defendant bank, discharging the duties the defendant had placed upon him in the course of his employment.**

3 C. J. S., Agency, sec. 257, p. 190, states as follows:

"Acts of fraud by agent, committed in the course or scope of his employment, are binding on the principal, even though the principal did not know or authorize the commission of the fraudulent acts, and although he derives no benefit from the success of the fraud, and the agent committed it for his own benefit."

7 C. J. sec. 167, p. 561, states:

"A bank may be held liable for the wrongful act of its officers and agents done in connection with the business of the bank and in the exercise of their apparent authority. * * *" Salt Lake City v. Hollister, 30 L. Ed. 176, 118 U. S. 256.

It is evident the fraud could not have been perpetrated by Standley had he not been an officer of the defendant bank. This alone would not serve to bind the defendant. But, when coupled with the fact the defendant voluntarily assumed an obligation not provided for by law, and then delegated its authority to one who committed the wrong while serving the defendant within the course of the employment designated to him, it follows the defendant should be held liable. Cases too numerous to require citation announce the principle that when one acting within the course of the employment he has derived from the bank perpetrates a wrongful act, then the loss must fall to the bank that gave him the authority which enabled him to do the wrong.

This reasoning, supported by a multitude of decisions, could be carried on indefinitely. We hold the evidence amply justified the trial court's findings as to the shortage, and the judgment placing the liability therefor upon the defendant, upon the principle that the defendant assumed the duties and so became liable for the acts of its own officer who perpetrated the fraud, by exercising the authority given him in the course of his

employment in handling the defendant's affairs.

Judgment affirmed.

BAYLESS, C. J., and RILEY, HURST, and DANNER, JJ., concur.