■ In the Matter of the Liquidation of REALEX GROUP, N. V. CHESAPEAKE INSURANCE COMPANY LIMITED, Appellant, v SALVATORE R. CURIALE, Superintendent of Insurance of the State of New York, as Liquidator, Respondent. [620 NYS2d 37] —Order of the Supreme Court, New York County (Carol Huff, J.), entered March 17, 1994, which granted defendant's motion, pursuant to CPLR 3211 (a) (7), to dismiss the complaint,

unanimously reversed, on the law, and the motion denied, without costs or disbursements.

Plaintiff, Chesapeake Insurance Company Limited (Chesapeake) is a reinsurer. Realex Group, N. V. (Realex) is also a reinsurer, which was placed in liquidation by the Supreme Court in 1987. Prior to that time, Chesapeake and Realex entered into two reinsurance agreements. Thus, in the Realex Agreement, Chesapeake agreed to reinsure Realex for a 40% quota share of certain reinsurance business to be written for Realex. In the Chesapeake Agreement, Realex agreed to reinsure Chesapeake for a 40% quota share of certain reinsurance business to be written for Chesapeake.

After Realex was placed in liquidation, the defendant Superintendent as Liquidator made demand upon plaintiff for monies owed Realex under the Realex Agreement and rejected plaintiff's suggestion of a setoff of monies owed to it under the Chesapeake Agreement. Thereafter, in order to protect its claims, plaintiff filed two Proofs of Claim against Realex in the Liquidation Proceeding in 1989, concurrently expressly disclaiming any waiver of its right of setoff. In January 1990, the Supreme Court, New York County decided in *Kemper Reins. Co. v Corcoran* (not officially reported) that the Liquidator was correct in his interpretation of Insurance Law § 7427 as disallowing any setoffs of debts and credits of a reinsurer that arose from different transactions with an estate in receivership. In February 1990, the parties reached an agreement (the Realex Commutation) where the obligations of plaintiff Chesapeake under the Realex Agreement were satisfied by the payment of $6,700,000 to the defendant Liquidator. In May of 1991, we unanimously modified the Supreme Court *(Matter of Midland Ins. Co. [Kemper Reins. Co. v Corcoran],* 167 AD2d 75). Subsequently, the Court of Appeals, in March 1992, unanimously affirmed our decision, agreeing that a reinsurer which is a party to two separate agreements with an insolvent insurer has the right to set off amounts due to it under one agreement against amounts due from it under another agreement. *(Matter of Midland Ins. Co. [Kemper Reins. Co. v Corcoran],* 79 NY2d 253).

After the Court of Appeals rendered its decision, plaintiff renewed its demand for a setoff and after a denial by defendant, commenced this action for restitution of the $853,000 paid under the Realex Agreement which was due to it from Realex pursuant to the Chesapeake Agreement. The IAS Court granted the defendant's motion to dismiss for failure to

state a cause of action finding that the Realex Commutation agreement barred the action and that even if *Kemper* were applied retroactively, "mutuality" was lacking.

Initially, we note that had plaintiff Chesapeake not settled the dispute with defendant over the Realex Agreement, pursuant to the principles enunciated in *Kemper,* there would have been no question of its entitlement to set off the monies due to it in the Chesapeake Agreement.

While the IAS Court found that mutuality was lacking between Chesapeake and defendant for purposes of a setoff pursuant to section 7427, the Court of Appeals has held that "debts and credits are mutual when they are 'due to and from the same person in the same capacity' " *(Kemper Reins. Co. v Corcoran, supra,* at 259, quoting *Beecher v Vogt Mfg. Co.,* 227 NY 468, 473). Here, as in *Kemper,* the debts and obligations arise out of two separate transactions or agreements and were due to and from the same parties in the same capacity. Thus, as in *Kemper,* the parties herein are "[c]ontracting principals, who are debtors and creditors of each other by virtue of entry into a contract or contracts, have the same legal capacity and may set off debts against each other" *(supra,* at 264).

Further, the IAS Court erred when it found that the Realex Commutation contained a release of Chesapeake's rights of setoff as to the monies owed to it under the Chesapeake Agreement. The nisi prius court correctly found that the Realex Commutation was not a standard preprinted release form and was "clearly the product of careful bargaining". In addition, it correctly noted that the release contains no language of limitation or exception. However, while the court asserted that plaintiff Chesapeake did not "choose to challenge the Liquidator's interpretation of the insurance statute, nor did plaintiff retain a right to modify the terms of the release", it is equally true that the Liquidator, who was aware of the claims made by plaintiff under the Chesapeake Agreement, also did not "choose" to have such claims specifically inserted in the Realex Commutation. The language and purpose of the Commutation was clear and its scope was limited, by its express terms, solely and exclusively to Chesapeake's liabilities to Realex pursuant to the Realex Agreement. Accordingly, it did not constitute a release of plaintiff's claims against Realex pursuant to the separate and distinct Chesapeake Agreement. At the very least, there remains an issue as to the parties' intentions with respect to the scope of the release *(see, Stanfill Plumbing & Heating Corp. v Dravo Constructors,* 191

AD2d 187), which would preclude a dismissal of the complaint at the pleading stage of the action.

In the complaint, the plaintiff asserts that it timely requested setoff pursuant to section 7427 but that defendant Liquidator improperly denied the request based on an erroneous interpretation of that section of the Insurance Law, and therefore wrongfully received and retained $853,000 to which plaintiff is entitled. This validly pleads a cause of action for restitution.

"Independent of any statute, form of action or legal nomenclature, the obligation to do justice rests upon all persons, natural or artificial, and the law will compel restitution from a person who obtains money or property from another fraudulently, *unjustly, or without authority. (Marsh* v. *Fulton County,* 10 Wall. [U. S.] 676, 684; *Salt Lake City* v. *Hollister,* 118 U. S. 256, 263; *Louisiana* v. *Wood,* 102 U. S. 294; *Ward* v. *Love County,* 253 U. S. 17, 24.)" *(Pink v Title Guar. & Trust Co.,* 274 NY 167, 173 [emphasis added].) This principle applies to offsets involving insolvents.

Thus, the Court of Appeals has noted: "Although permitting offsets may conflict with the statutory purpose of providing for the pro rata distribution of the insolvent's estate to creditors, the Legislature has resolved the competing concerns and recognized offsets as a species of lawful preference. Indeed, if an offset is otherwise valid, there would seem to be no reason why its allowance should be considered a preference: it is 'only the balance, if any, after the set-off is deducted which can *justly* be held to form part of the assets of the insolvent' *(Scott v Armstrong,* 146 US 499, 510)". *(Matter of Midland Ins. Co. [Kemper Reins. Co. v Corcoran],* supra, at 262 [emphasis added].) In addition, the Court of Appeals noted in *Kemper* that liquidation proceedings cannot be used to "place the liquidator in a better position than the insolvent company he takes over, authorizing him to demand that which the company would not have been entitled to prior to liquidation" *(supra,* at 264-265).

Finally, although we are concerned here only with the viability of the complaint at this early stage of the proceeding, we note that to disallow a setoff of money owed to the reinsurer because the reinsurer has entered into a settlement agreement with the Liquidator as to the money owed by it to the insolvent, might have dire results. Such a rule could bring all settlement negotiations to a halt, even where the debt of the reinsurer to the insolvent is acknowledged, and encourage

reinsurers to litigate in all cases involving the Liquidator from fear of losing their rights to setoff mutual debts. Concur—Sullivan, J. P., Rosenberger, Ross, Asch and Tom, JJ.