## PEARSON v. ROCKY MOUNTAIN FUEL CO. †

(Circuit Court of Appeals, Eighth Circuit. January 4, 1915.)

### No. 4241.

1. MASTER AND SERVANT ☞217—DEATH OF SERVANT—MINING—ASSUMED RISK.

A servant assumed the risk of the fall of a portion of the roof of the main entry of a mine, if, after having been warned of the danger and his attention directly called to the defect, he deliberately passed under it and was killed, though it was the master's duty to make the place safe.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. ☞217.]

2. JURY ☞132—QUALIFICATION OF JUROR—IMPLIED BIAS.

Evidence adduced on the examination of a juror on his voir dire, on which the court denied plaintiff's challenge for implied bias, *held* not to show an abuse of discretion.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 583–585; Dec. Dig. ☞132.]

In Error to the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Action by Matilda Pearson against the Rocky Mountain Fuel Company. Judgment for defendant, and plaintiff brings error. Affirmed.

L. J. Stark, of Denver, Colo. (Harry B. Tedrow, of Boulder, Colo., on the brief), for plaintiff in error.

Harry S. Silverstein, of Denver Colo. (J. V. Sickman, of Denver, Colo., on the brief), for defendant in error.

Before CARLAND, Circuit Judge, and T. C. MUNGER and YOUMANS, District Judges.

CARLAND, Circuit Judge. [1] This is an action to recover damages for the death of Joseph Pearson, alleged to have been caused by the negligence of defendant in error. A verdict and judgment was rendered against the plaintiff in error. The only errors relied on in the brief are: (1) The refusal of the court to allow a challenge for cause to the juror John R. Morey; (2) the giving by the court of the following charge to the jury:

"One who continues to change the condition of a place in which he works assumes the risk of the changes which were brought about by himself. If the

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

† Rehearing denied March 19, 1915.

rock fell from the place which he himself by his own work rendered danger-ous, his widow cannot recover, and that would be so regardless of whether he knew at the time that it was dangerous.

"The defendant, in addition to introducing evidence to show that the rock fell from the roof in the place where the deceased was working, also offered evidence to show that his attention had been directed to this particular rock. He was told it was dangerous; it was liable to fall—by more than one wit-ness who testified. That he ignored that warning. If you believe that to be true, then the plaintiff cannot recover, even though you may find that the rock fell out of the roof of the entry, because in that event he had been warned of this hanging rock and told that it might fall at any time. His attention was directly attracted to it; then he thereby assumed the risk of going under it, whether it was in the place which he was working or whether it was in the main entry. If, however, the rock fell from the roof of the main entry, a place which the law required the defendant to make safe for those passing through it, and the deceased had no knowledge of its unsafe condition and had not been warned of any danger at that point, then the de-fendant was negligent, and if that negligence in failing to so maintain the passageway in a safe condition was the cause of the death of Joseph Pearson, then the plaintiff has made out a case, and she is entitled to a verdict at your hands for such damages as you believe she has suffered, not exceeding $5,000."

The only exception to the charge of the court appearing in the record was taken in the following manner: At the close of the court's charge, counsel for plaintiff in error addressing the court said:

"We desire to note our exceptions to the court's instruction with reference to those portions which stated, if the jury should believe the testimony of two witnesses that the rock fell from the entryway, the plaintiff could not recover for the reason that that is contrary to the law and is also not sup-ported by the testimony of the witnesses."

The court said, "I don't get your point." There was further discus-sion between the court and counsel which closed by counsel saying, "We reserve our exceptions." We do not think the exception, when taken in connection with the above excerpt from the charge to which the exception is claimed to have been aimed, could have been under-stood by the court as referring to this portion of the charge. Conced-ing, however, that it did, we see no error in the charge complained of after carefully reading the evidence in the case.

[2] At the trial, John R. Morey was called as a juror, and, being sworn and examined as to his qualifications, testified as follows:

"By Mr. Tedrow:
"Q. You heard what I said about the case, did you? A. Yes.
"Q. You live in Denver? A. Yes, sir; wholesale grocer.
"Q. You have lived here a long time, have you not? A. Yes, sir.
"Q. You know the defendant in this case, the Rocky Mountain Fuel Com-pany? A. Yes, sir.
"Q. Do you know Mr. Silverstein and Mr. Sickman? A. I know Mr. Silver-stein.
"Q. You don't know the plaintiff in this case, Mrs. Pearson? A. No.
"Q. Did you ever hear about this accident? A. No, I don't think so.
"Q. Have you business connections with the Rocky Mountain Fuel Company? A. Yes, sir.
"Q. Of what nature have they been? A. Well, bought considerable coal from them—from the company itself, and had a great deal of business with the subsidiary business of the Rocky Mountain Stores Company.
"Q. Have you any direct connection with either of them? A. No, sir.

219 F.—32

"Q. Are you now having business relations with either of these companies? A. Yes, sir.

"Q. You sell them stuff, do you, goods? A. Yes.

"Q. A great deal of goods? A. Yes, sir.

"Q. Do you buy coal of them? A. Yes, sir.

"Q. Do you know of any reason why you could not sit here in this case and determine it upon the facts? A. Not unless that business relations with the company would be a reason, sir.

"Q. Do you think that would be a reason? A. I will try not to allow it to be, sir. Our relations have been very friendly with the company; always have been.

"Q. Do you think that that would be sufficient to affect your judgment in this case against the plaintiff? A. Why, no and yes. I would try not to allow it, sir—

"Q. You feel— A. I feel very friendly toward the company.

"Q. And you feel you might be inclined a little toward the company in a case in which it was involved? A. If there was a question probably my leaning would be on their side, if it was an even break.

"Q. Would this relationship that exists between you, and your friendly relations, create any element of prejudice in favor of the defendant the Rocky Mountain Fuel Company, do you think? A. Not if the evidence showed that it was against them; no, sir.

"Q. You think that you could arrive at a fair and impartial verdict in this case, based upon the evidence, irrespective of your personal connections and friendship for the company, do you? A. I think so; yes, sir.

"Q. Over how long a period, Mr. Morey, has this relationship with the company extended? A. For several years, sir. I couldn't say; ever since they formed the Rocky Mountain Stores Company.

"Q. How long have you been in business yourself? A. About 14 years, sir.

"Q. And you have been selling goods to them for about four years, ever since the organization of the Rocky Mountain Stores Company? A. Yes.

"Q. You are brought into direct contact in that with the officers or principal agents of the company, are you not? A. The principal agent of the Rocky Mountain Stores Company; yes, sir.

"Q. You have never had any accident similar to this in your business, Mr. Morey? A. No, sir. No one has ever been killed. We have had accidents, but not seriously.

"Q. You never had any litigation growing out of an action of this sort? A. Not since my recollection, sir.

"Q. Have you ever sat upon a jury that had this particular subject pointed out before? A. No, sir; I have not.

"Q. Do you have any opinion in your mind with regard to the subject in general of accidents and against companies growing out of damage suits? A. Well, I feel that a corporation should take every precaution possible.

"Q. Do you feel that they should be held liable for accidents that occur when they have not taken proper precautions? A. Depends entirely on the circumstances.

"Q. Do you think as a general proposition that they should be liable for negligence on their part? A. Absolute negligence; yes, sir.

"Q. You feel that in this particular instance that you could be unprejudiced in this case, do you, Mr. Morey? A. Why, as far as I know; yes, sir.

"Q. And that, as stated before, the relationship which existed between you would not affect you in any wise? A. No, except, as I say, if there was a case of reasonable doubt my leaning would naturally be towards the defendant.

"Q. But if it wasn't a case of reasonable doubt, but a case of the preponderance of the evidence, would that make any difference? A. I would be guided by the evidence.

"Q. You would feel it was necessary for the plaintiff in this case to make out a case beyond a reasonable doubt?

"Mr. Tedrow: We challenge the juror.

"Mr. Silverstein: We resist the challenge.

"Cross-Examination.

"By Mr. Silverstein:

"Q. In your relations with either side or in any transactions that have taken place, would that prevent you from following the expression of the court as to what the law is? A. Certainly not.

"Q. And if taken as a juror to do that, you will do so? A. Yes, sir.

"Q. And try the case wholly upon the law and the evidence? A. Yes, sir.

"Q. You can do that and will do that? A. Yes, sir."

Counsel for plaintiff in error at the close of the examination challenged the juror for cause, and the challenge was disallowed. At the time of this ruling the plaintiff had exhausted all of her peremptory challenges. We are of the opinion that the juror could have been properly excused, and that there would have been no error in so doing; but the question presented to us is not the same as the one presented to the trial judge. In Reynolds v. United States, 98 U. S. 145-156 (25 L. Ed. 244), the Supreme Court said:

"It is clear therefore that upon the trial of the issue of fact raised by a challenge for such cause the court will practically be called upon to determine whether the nature and strength of the opinion formed are such as in law necessarily to raise the presumption of partiality. The question thus presented is one of mixed law and fact, and to be tried, as far as the facts are concerned, like any other issue of that character, upon the evidence. The finding of the trial court upon that issue ought not to be set aside by a reviewing court, unless the error is manifest. No less stringent rules should be applied by the reviewing court in such a case than those which govern in the consideration of motions for new trial because the verdict is against the evidence. It must be made clearly to appear that upon the evidence the court ought to have found the juror had formed such an opinion that he could not in law be deemed impartial. The case must be one in which it is manifest the law left nothing to the 'conscience or discretion' of the court."

Under this rule we do not think that we would be justified in reversing the case for the action of the court in disallowing the challenge. We cannot say there was nothing left to the conscience or discretion of the trial court. The trial judge may have had personal knowledge of the character of the juror and other information that we do not have.

It seems to be the settled rule in Colorado that the finding of the trial court in determining as matter of fact whether the juror is competent is conclusive except in case of gross abuse of discretion. Imboden v. People, 40 Colo. 142, 172, 90 Pac. 608; Minich v. People, 8 Colo. 447, 9 Pac. 4; Babcock v. People, 13 Colo. 515, 22 Pac. 817; Thompson v. People, 26 Colo. 496, 59 Pac. 51.

The assignments of error being without merit, the judgment below must be affirmed. And it is so ordered.