BADDERS CLOTHING CO. v. BURNHAM–MUNGER–ROOT DRY GOODS CO. et al. (two cases).*

BADDERS CLOTHING CO. et al. v. SAME.

(Circuit Court of Appeals, Eighth Circuit. December 3, 1915.)

Nos. 4292, 4293, 139.

1. JURY ☞103—CHALLENGES FOR CAUSE—PERSONAL OPINIONS.

Where a juror on his examination stated that he would act on his own judgment of the value of real property, but in reply to the court said he would take the evidence of the witnesses as to the facts, the overruling of a challenge for cause was not error.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 444, 456, 460–479, 497; Dec. Dig. ☞103.]

2. BANKRUPTCY ☞63—CORPORATION—ACTS OF BANKRUPTCY—ACTS ULTRA VIRES.

It is no defense to a proceeding in bankruptcy against a corporation that the act of bankruptcy charged was not within its charter powers.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ☞63.]

3. BANKRUPTCY ⬦63—CORPORATIONS—ACTS OF BANKRUPTCY—EVIDENCE.

If a corporation engages in a plan to hinder and defraud its creditors by concealing or transferring its property, the proof is primarily found in the conduct of its officers in authority; and, where a part of the plan is their individual enrichment at the expense of the creditors, the distinction between official and personal acts should not be drawn too nicely, and is not ground for excluding testimony of their acts in bankruptcy proceedings against the corporation.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ⬦63.]

4. CORPORATIONS ⬦397—REPRESENTATION BY OFFICERS—ACTS WITHIN SCOPE OF AUTHORITY.

If an officer of a corporation acts within the authority with which he has been clothed, and others are injured, the same consequences follow as in the case of a natural person.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1585, 1586, 1588, 1589, 1596–1601; Dec. Dig. ⬦397.]

5. BANKRUPTCY ⬦91—PROCEEDINGS AGAINST CORPORATION—EVIDENCE.

A statement of the mercantile indebtedness of a corporation, drawn from its ledger by the witness at the request of its president and submitted to and corrected by him, held admissible in evidence in proceedings in bankruptcy against the corporation, although the witness did not make the book entries and the ledger, though in court and used by both parties, was not offered in evidence in its entirety.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 137–139; Dec. Dig. ⬦91.]

6. BANKRUPTCY ⬦95—INVOLUNTARY PROCEEDINGS—JURY TRIAL—VERDICT.

Where, on the trial of an involuntary petition in bankruptcy against a corporation, through oversight the question of the solvency of the corporation when the petition was filed was not submitted to the jury in the first instance, it was not error for the court, before they had been discharged, to require them to find a supplemental verdict on that issue.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 132, 140, 145; Dec. Dig. ⬦95.]

7. BANKRUPTCY ⬦114—APPOINTMENT OF RECEIVERS.

In involuntary proceedings, receivers should never be appointed without full compliance with all requirements of the Bankruptcy Act, including a showing that it is absolutely necessary for the preservation of the estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 164–166; Dec. Dig. ⬦114.]

8. COURTS ⬦356—FEDERAL COURTS—RIGHT OF REVIEW—ASSIGNMENTS AND SPECIFICATIONS OF ERROR.

Except when enlarged in the discretion of the appellate court, the right of review in the federal courts depends, first, upon sufficient assignments of error filed below and shown in the record, and then upon a specification in the briefs of the errors relied on which are necessarily errors which have been assigned, and they should, in some appropriate way, be identified with the assignments in the record, especially when both are numerous.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 937; Dec. Dig. ⬦356.]

In Error to, Appeal from, and Petition to Revise Order of, the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

In the matter of the Badders Clothing Company, bankrupt. To review proceedings resulting in its adjudication on petition of Burnham-

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Munger-Root Dry Goods Company and others, the bankrupt brings error; and from certain orders therein, it appeals. A petition to revise in matter of law is also filed. Adjudication affirmed, and petition to revise dismissed.

D. R. Hite, of Kansas City, Kan., and James H. Harkless, of Kansas City, Mo., for plaintiff in error, appellant, and petitioners.

A. L. Quant and Edwin A. Krauthoff, both of Topeka, Kan. (W. S. McClintock, of Topeka, Kan., on the brief), for defendants in error, appellees, and respondents.

Before SANBORN and HOOK, Circuit Judges, and AMIDON, District Judge.

HOOK, Circuit Judge. No. 4292 is a writ of error to review the proceedings at a trial by jury, resulting in a verdict and an adjudication of bankruptcy against the Badders Clothing Company, a Kansas corporation. No. 4293 is an appeal from certain orders in the bankruptcy proceedings, and No. 139 original is a petition to revise in matter of law.

[1] The rulings of the trial court in allowing amendment of the petition in bankruptcy and in requiring the bankrupt to proceed to trial were within its reasonable discretion. The defect in the verification of the petition, if any, was waived by the answer. Statements in the answer that the petition does not conform to the Bankruptcy Act, and that the facts alleged do not confer jurisdiction nor entitle petitioners to relief, are too general to challenge the verification. Objection is made that the jury was not summoned as required by the laws of Kansas. If there is anything of importance in this, the references to the record do not disclose it. The jury appears to have been secured according to Judicial Code, §§ 279, 280 (Act March 3, 1911, c. 231, 36 Stat. 1165 [Comp. St. 1913, §§ 1256, 1257]). In response to a question by counsel touching his qualifications, Juror Brewer said he would act on his own judgment of the value of real property, instead of upon what others would say. But in reply to a question by the court he said he would take the evidence of the witnesses as to the facts. The court overruled a challenge for cause. This was not error. Pearson v. Rocky Mountain Fuel Co., 219 Fed. 496, 135 C. C. A. 208; Reynolds v. United States, 98 U. S. 145, 25 L. Ed. 244.

The petition charged the commission of six acts of bankruptcy. The first five were preferential payments to creditors when insolvent. The sixth was that the bankrupt conveyed, transferred, concealed, and removed, and permitted to be concealed and removed, a large portion of its property with intent to hinder, delay, and defraud its creditors, with averments of details. Since the adjudication may be sustained by a proper charge in the petition and adequate proof at the trial of any one of them, it is enough to say the petition was sufficient as to the sixth, and the proof of it was clear and convincing. By its answer the bankrupt denied insolvency. Solvency when the petition was filed was a complete defense to the sixth charge, but the burden of proving it was on the bankrupt. Bankruptcy Act (Act July 1, 1898,

c. 541, § 3c, 30 Stat. 546 [Comp. St. 1913, § 9587]). The jury also found against it on that issue and we think the evidence sustained the finding.

[2] Counsel contend that under the laws of Kansas where the bankrupt was incorporated and domiciled, and the decisions of the courts, the acts charged against it, if true, were ultra vires and void, were not corporate acts, and therefore would not constitute ground for adjudication in bankruptcy. They say:

"A corporation can do and assent to the doing by its officers of only those things which are within the corporate power, while an individual may do anything he pleases. * * * An individual may divert his property in any manner that he pleases, by giving it away, or by selling it for an unlawful consideration, or by concealing it, or doing anything else with it that he pleases. Not so with a corporation. It can do no act prohibited by the terms of its charter or the general law. If the general law prohibits corporations from diverting their assets or property from a use which by the terms of their charter they are authorized to make of it, any attempt on the part of those in charge of the corporate affairs to divert such assets is ultra vires and absolutely void. Indeed it is not an act of the corporation."

This is a revival of an ancient fiction long since discarded. It is equivalent to saying a corporation can do no wrong. But a corporation may be held for a felony by engaging in a conspiracy (Joplin Mercantile Co. v. United States, 213 Fed. 926, 131 C. C. A. 160); assault and battery with a deadly weapon (Railway v. Harris, 122 U. S. 597, 7 Sup. Ct. 1286, 30 L. Ed. 1146); libel (Railroad v. Quigley, 21 How. 202, 16 L. Ed. 73); fraud and deceit, assault and battery, malicious prosecution, nuisance and libel (National Bank v. Graham, 100 U. S. 699, 25 L. Ed. 750); fraud in reports to revenue collector (Salt Lake City v. Hollister, 118 U. S. 256, 6 Sup. Ct. 1055, 30 L. Ed. 176); fraud and deceit (Butler v. Watkins, 13 Wall. 457, 20 L. Ed. 629); boycotting (Hartnett v. Plumbers' Supply Ass'n, 169 Mass. 229, 47 N. E. 1002, 38 L. R. A. 194); false representation (Dorsey Machine Co. v. McCaffrey, 139 Ind. 545, 38 N. E. 208, 47 Am. St. Rep. 290); false imprisonment (Wachsmuth v. Nat. Bank, 96 Mich. 426, 56 N. W. 9, 21 L. R. A. 278); conspiracy by a bank through its president with a merchant to defraud those selling goods to the latter (Johnston Fife Hat Co. v. National Bank, 4 Okl. 17, 44 Pac. 192). There are many other apposite cases. It would be quite strange to find that a corporation could not commit the wrong involved in the charge before us. The words of the Bankruptcy Act are broad enough to include the corporation here. See sections 1 (19), 3a (1), 4b.

[3, 4] While upon this subject we may refer to complaints of the admission of testimony of acts of George S. Badders claimed to have been for his personal benefit, and therefore not attributable to his corporation. Badders was the president of and dominated the company. He exercised unrestrained control over its affairs. If the power of restraint was elsewhere, it does not appear to have been exercised. Neither the directors nor other stockholders, if there were any with substantial holdings, interfered. He was practically the corporation in the conduct of its business. The evidence shows a plan

and purpose to defraud its creditors which were in course of accomplishment when arrested by the bankruptcy proceedings. Its stock of goods was being sold, in some instances at a sacrifice, and the proceeds taken by Badders and used in such ways as to put them beyond the reach of corporate creditors. If a corporation engages in a plan to hinder and defraud its creditors by concealing or transferring its property, the proof is primarily found in the conduct of its officers in authority, and where part of the plan is their individual enrichment at the expense of the creditors, the distinction between official and personal acts should not be drawn too nicely. The ultimate disposition of the corporate property or its proceeds, however made, may be the very effective act which was intended to hinder or defraud the creditors. Having ventured upon the wrongful course, it may even act through agents who have no official relation to it. We are not now speaking of contracts ultra vires. Nor does it follow that every wrongful act of an officer is the act of his corporation. It may be unauthorized or be a trespass upon the corporate rights. But if the officer acts within the authority with which he has been clothed and others are injured, the same consequences follow as in the case of a natural person. It is worthy of note in this case that the bankrupt joined Badders individually in resisting preliminary efforts in the bankruptcy court to uncover the transactions and disclose corporate assets.

[5] Complaint is made of the admission of a statement of the mercantile indebtedness of the bankrupt drawn from its ledger by witness Coulson. The witness testified that he had been in the employment of the bankrupt as a salesman, and also did some work upon the books; that at the request of Badders, the president, he drew off the statement for use in preparing a trial balance; that he submitted it to Badders, who suggested some minor corrections, which were made. The statement purported to show the total mercantile indebtedness of the bankrupt, though it appeared that some of the amounts were perhaps subject to trade discount. The ledger from which the statement was drawn was not offered in evidence in its entirety, but it was identified, and was in court, where it was used by counsel for both parties. Some of the items on the list showing creditors and amounts owing were verified by reference to pages of the ledger, which were separately offered and received in evidence. Other parts of the ledger, relating to other matters, were offered in evidence by both parties. The witness did not make the ledger entries drawn off by him, and had no personal knowledge of their correctness, but the book was one of the records of the bankrupt's business kept under its direction, and the statement was prepared, submitted to, and corrected at the instance of its president. It needs no discussion or citation of authority to show the evidence was admissible.

[6] Complaint is made regarding the verdicts. The jury first found six separate verdicts, one upon each act of bankruptcy in issue. In each they specifically found that the bankrupt, while insolvent, committed the act of bankruptcy charged. The attention of the court was then called to the omission to find upon the issue of solvency or in-

solvency when the petition was filed. There had been some confusion in selecting the proper forms of verdict to be submitted, which the court said was due to its oversight. Counsel for the bankrupt objected "to any change in the verdict." The courts replied: "We are not changing it. We are getting a further verdict." The court then directed the jury "to retire and find a verdict on another question," which was explained. They returned a verdict, finding the issue in question in favor of the petitioning creditors, specifying that the bankrupt was insolvent at the date of the petition. They also found in addition that prior thereto it committed the several acts of bankrupcy charged. It is sufficient to say, without considering the effect of this last verdict in its entirety and by itself, that the finding of the bankrupt's insolvency when the petition was filed supplemented the prior separate verdict on the sixth charge. The action of the trial court was entirely right. The jury had not been discharged, but were still in service, and when the omission of the issue was discovered, it was proper to have them retire and complete their duty.

[7] Many objections are urged to the proceedings outside the trial, as that the restraining order at the beginning of the proceedings was erroneous because the petition in bankruptcy was defective; that certain questions as to the restraining order and the appointment of a receiver were referred to the referee as special master; that the court did not wait for his report; that a receiver was appointed without sufficient cause; that the bond for the appointment of a receiver was not conditioned as required by the Bankruptcy Act, and was not approved by the court or judge, etc. Such of them as ever had merit have become moot. It should be said, however, that in involuntary proceedings receivers should never be appointed under sections 2(3) and 3e, of the Bankruptcy Act without full compliance with all the requirements, including a showing of cause. It is an extraordinary remedy which should only be granted when, as the statute says, "absolutely necessary" for the preservation of the estate. But in this case the application for the appointment showed such an emergency; and upon a hearing, the bankrupt being represented, the trial court found and recited in its order the absolute necessity.

[8] The printed record with the writ of error and appeal consists of 689 pages. There are 91 assignments of error on the writ of error and 11 on the appeal, consecutively numbered in each case. The briefs for the bankrupt contain 74 specifications of error in the one case and 8 in the other, also consecutively numbered, but with no identifying references to the assignments. The numbers of the assignments and of the specifications upon the same subjects are different in almost every instance. Some of the specifications are made up of parts of widely separated assignments, the language being changed, and in some instances the scope. This confusion, which was not necessary for a topical arrangement of the errors asserted has imposed upon us much unnecessary labor, and is contrary to the intent of rules 11 and 23 of this court. Except when enlarged in the discretion of the court, the right of review depends, first, upon sufficient assignments of error filed below and shown in the record,

and then upon a specification in the briefs of the errors relied on. The errors specified as relied on are necessarily errors which have been assigned. The assignments required by statute and rule of court to be filed with the trial court are not a mere formality, or preclude to enlarged or different specifications in the briefs. The former mark the limits of the latter. No changed or new specifications of error should be made except in connection with an appeal to the discretion of the court to consider them. If a review of a case is to be facilitated, the specifications in the briefs should be identified in some appropriate way with the assignments in the record, especially when both are numerous. Passing this, it should be further said that many matters are discussed in the briefs without references to the pages of the record where they might be found. Rule 24 (224 Fed. xvi) of this court upon this subject is so reasonable, and has been so frequently called to attention, that we feel we should not assume the task of searching the record. Chicago Great Western Ry. Co. v. Egan, 159 Fed. 40, 86 C. C. A. 230. We have also omitted discussion of other matters obviously without merit.

The adjudication in bankruptcy is affirmed; the petition to revise is dismissed.