Edward D. HASSAN, Trustee, Plaintiff, Appellant,

v.

MIDDLESEX COUNTY NATIONAL BANK, Defendant, Appellee.

In the Matter of MYSTIC PIPE & SUPPLY CORP., Bankrupt.

No. 6313.

United States Court of Appeals First Circuit.

July 6, 1964.

Alfred W. Petchaft, St. Louis, Mo., made argument for appellant.

Thomas F. McWilliams, Chicago, Ill., made argument for appellee and filed brief with Roy A. Lieder and Joseph J. Gravely, St. Louis, Mo.

Before VOGEL, MATTHES and RIDGE, Circuit Judges.

Michael H. Goshko, Boston, Mass., with whom John F. McCarty, Jr., and Cohn, Riemer & Pollack, Boston, Mass., were on brief, for appellant.

Cyril Hochberg, Boston, Mass., with whom Arthur T. Wasserman and Wasserman & Slater, Boston, Mass., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

Plaintiff-appellant, Edward D. Hassan, Trustee in Bankruptcy of Mystic Pipe & Supply Corp., brought suit in the United States District Court for the District of Massachusetts under Section 60, subs. a and b of the Bankruptcy Act to set aside as voidable preferences three transfers alleged to have been made by the bankrupt to defendant-appellee, Middlesex County National Bank, within four months of the filing of the petition. The district Court ruled that there had been no showing of insolvency and no proof to support the allegation of the complaint that Mystic was insolvent when the questioned transfers took place. Judgment was entered for appellee on January 31, 1964, and appellant appeals.

The facts are these. On January 23, 1962, Mystic Pipe & Supply Corp., a Massachusetts corporation engaged in the business of selling plumbing supplies, filed a petition in bankruptcy pursuant to Section 322 of the Act. Appellant was appointed trustee and subsequently brought this action against Middlesex. Two of the transfers sought to be set aside were alleged to have taken place on October 23 and 25, 1961 and were of accounts receivable which Mystic had assigned to appellee as security for loans made to it by appellee. The third transfer was allegedly made on November 10, 1961 and concerned a payment to Middlesex of $10,000.

At the trial before the court sitting without a jury, the trustee sought to show that Mystic was insolvent on the dates of the transfers. To this end, a certified public accountant testified that he had prepared a balance sheet which showed that on September 30, 1961 the bankrupt had a net deficit of $84,252.54. The figures and computations used to reach that result were obtained from the general ledger of Mystic with the exception of the figure used for inventory. That figure was arrived at by the accountant's taking the results of a closing physical inventory, taken as of January 23, 1962 by Mystic's president and treas-

urer, Marino Matrundola, and, working backward through the entries in the general ledger, adjusting the January 23 figure to reflect sales, purchases and returns made since September 30, 1961. By similarly working backward through the general ledger, and with Mystic's financial condition as of September 30 established, appellant intended to demonstrate the bankrupt's insolvency on each of the transfer dates.

To lay the foundation necessary for placing the general ledger in evidence as a basis for the accountant's testimony, appellant called Matrundola to the stand. He stated that he was unfamiliar with the corporation's books. Appellant seemed surprised at this result and the court allowed the accountant to testify anyway with the proviso that if the ledger was not subsequently admitted in evidence, the testimony would have no foundation. Appellant, however, was given no further opportunity to lay the proper foundation for the ledger through another witness. Upon learning that the result reached on the balance sheet was not derived solely from the general ledger, the court struck the accountant's testimony and the three exhibits offered in conjunction therewith as hearsay.[1] Since the only other source relied on by the accountant was the physical inventory taken by Matrundola, he was recalled to the stand to testify concerning that procedure. The court then stated its belief that even if appellant succeeded in establishing Mystic's financial condition as of September 30, 1961 and then, working backward from the January, 1962 inventory, showed Mystic's insolvency on the transfer dates, it would not be persuaded by such testimony due to the possible existence of thieves, embezzlers, careless deliveries, etc., which would make the situation as it was in January, 1962 "not very persuasive as to what the situation was" on earlier dates. It felt, therefore, that testimony as to the value of inventory as of the January date was of no significance and sustained appellee's ob-

jection to such testimony, thus cutting short appellant's attempt to prove insolvency through retrojection, the only way it could be proved under the circumstances. On the basis of appellee's failure to prove insolvency on the critical dates, judgment was entered for appellee.

We believe the lower court erred in ruling that the trustee could not prove insolvency on the preferential dates in the only manner available to him. Appellant was forced to resort to this round-about method due to the fact that no inventory of the corporation taken since June of 1960 had been certified by an accountant or made available to him. Insolvency is not always susceptible of direct proof and frequently must be determined by the proof of other facts or factors from which the ultimate fact of insolvency on the transfer dates must be inferred or presumed. 1 Collier on Bankruptcy 123 (14th ed. 1962). The method sought to be used by appellant is not novel and has been utilized often in bankruptcy proceedings. See, e. g., Inter-State National Bank of Kansas City v. Luther, 221 F.2d 382, 391 (10th Cir. 1955); Mutual Savings & Loan Association v. McCants, 183 F.2d 423, 425 (4th Cir. 1950); Rosenberg v. Semple, 257 F. 72 (3rd Cir. 1919); In re Great Western Biscuit Co., 85 F.Supp. 314 (S.D.Cal.1949). In Rosenberg v. Semple, supra, a balance sheet dated December 1 showing the bankrupt to be running a deficit shortly before the preferred transfer was competent to help establish insolvency on the transfer date where, as here, the statement was made up from books of the company with the exception of the inventory item which was taken from the inventory and appraisement filed in the bankruptcy proceedings and worked back to the December 1 date. When such a method is sought to be invoked it is essential that the trustee be able to show the absence of any substantial or radical changes in

---

1. The exhibits included the above mentioned balance sheet and a trial balance and profit and loss statement.

the assets or liabilities of the bankrupt between the retrojection dates. Mc-Clung-Logan Equipment Co. v. Friedman, 195 F.2d 516 (4th Cir. 1952). This appellant was prepared to do through the general ledger. Appellee argues that the failure of the trustee to get the ledger admitted into evidence was fatal to his case. But even if appellant had been given another opportunity to gain its admission, which he was not, the trial court's view as to the January 23 inventory would have made the ledger meaningless.

 Assuming the eventual foundation being laid for the general ledger, the testimony of the accountant and of Matrundola was competent testimony toward establishing insolvency on the three dates in issue. See Abdo v. Townshend, 282 F. 476, 480 (4th Cir. 1922); see also Badders Clothing Co. v. Burnham-Munger-Root D. G. Co.,-228 F. 470, 474 (8th Cir. 1915). The probative force of such testimony was, of course, for the court to determine, but appellant should have been allowed to introduce all his

evidence in an effort to establish his case and allow the court to draw the proper inferences. An *a priori* finding by the court that, if admitted, it would not believe a particular piece of testimony is not a proper basis for an exclusionary ruling. The probative force of testimony is to be determined when all offered admissible evidence has been introduced and counsel has had an opportunity to argue his case. The error was particularly marked here because the issue was not the credibility of the proffered. testimony, but was whether the conclusion that would normally follow therefrom should not be drawn because of some additional circumstances— "thieves, embezzlers," etc. As to this the burden would not have been on the proponent of the evidence, but on the opponent. The court's personal feeling, amounting, in effect, to a conclusive presumption of wrongdoing was, at best, premature.

Judgment will be entered vacating the judgment of the district court, and remanding the case for a new trial consistent with this opinion.