**NORTHEAST AIRLINES, INC.,**
Petitioner,

v.

**CIVIL AERONAUTICS BOARD,**
Respondent (four cases).

Nos. 6220, 6233, 6445, 6506.

United States Court of Appeals
First Circuit.
April 13, 1965.

Henry E. Foley, Clarence I. Peterson, Loyd M. Starrett, Laurence S. Fordham, and Foley, Hoag & Eliot, Boston, Mass., on brief for petitioner.

John H. Wanner, General Counsel, and O. D. Ozment, Associate General Counsel, on brief for respondent.

Before ALDRICH, Chief Judge, and MARIS * and BURGER *, Circuit Judges.

ALDRICH, Chief Judge.

We are faced again with the troublesome and divisive question of the renewal of Northeast Airlines' temporary socalled Florida certificate. Following our remand to the Board for "further study * * * [and] an explicit statement * * *." Northeast Airlines, Inc. v. CAB, 331 F.2d 579, May 8, 1964, of its initial decision against Northeast, the Board on December 1, 1964, after receiving various briefs from the parties, but without reopening the evidence, rendered a new, and what it termed "complete recast" of its decision. It reached the same result, and by the same majority. After obtaining leave from this court on December 15, Northeast moved for rehearing and reconsideration. On March 5, by further opinion, this petition was denied. Northeast has now filed a further petition for review of the substantive decision. It has also filed a Motion for Order Directing the Board to Receive Certain Further Evidence. This motion is presently before us. Since, in our view, our allowance of the motion, in part, will constitute no ruling on the merits,[1] we shall be relatively brief.

The December 1 opinion made a number of changes in the prior one. We shall not here recount, or assess them all.[2]

Before determining how, procedurally, it would decide the case the second time the Board reviewed the various possibilities and concluded to rest upon the old record plus "reports filed by the carriers since the formal closing of the evidentiary record and other stipulated materials."[3] It concluded that these matters did not "indicate sufficient change in circumstances to warrant reopening." "[O]ur primary concern in this proceeding is with the future, but * * * [w]e find nothing in this record which convinces us that Northeast's operation could be expected to be economic over an extended period of time." The Board based this conclusion upon operating

---

* By designation.

1. It will, concededly, delay matters, which we do regret, but in the light of the admitted magnitude of the consequences involved we cannot think expedition the foremost consideration.

2. Indeed, we expressly caution the parties, for the reason already indicated, to draw no conclusions as to our views, or final view on the merits from what we now say, or do not say, about the Board's various opinions and actions.

3. We might remark, parenthetically, that we are not presently sure what this latter phrase included. The fault may be ours. However, we observe that National Airlines in its opposition to Northeast's Petition for Rehearing and Reconsideration argued for a broad and continuing interpretation of a prior stipulation. The Board's treatment of that argument was to say that it was not resolving it. In its March 5 opinion the Board stated that what it had looked at were "more recent operating results and traffic statistics."

figures through the first quarter of 1964, i. e., current as of eight months prior to the date of its decision. These more recent figures, it said, "bear out our former findings." With respect to the possible effects of the impermanence of Northeast's certificate and the ups and downs of the renewal proceedings, discussed in our previous opinion, the Board made two references. First, in a footnote, it recognized that there "may have [been] some depressing effect," but expressed "doubt * * * that this was significant." Thereafter, in the body of its opinion, it stated flatly that it "cannot attribute Northeast's failure to any of these factors," listing these and some other alleged temporary circumstances.

The principal burden of Northeast's extensive petition for rehearing was that in considering further evidentiary matters on which to decide against it the Board had chosen some and disregarded others, and had afforded Northeast no opportunity to rebut or explain. In part Northeast relied upon Section 7(d) of the Administrative Procedure Act, 5 U.S.C. § 1006.[4] The motion to remand requests the opportunity to make an affirmative showing of certain matters which Northeast asserts would have that effect, some of which it detailed in what might be regarded as an offer of proof, and some of which it did not. In general these consisted of more recent figures, of expert testimony of an interpretive and prognostic variety, and of testimony on the effect of the renewal proceedings on Northeast's traffic in 1963 and 1964. In addition, Northeast asserted that its original application was not filed upon an "all or nothing at all" basis, and that the Board should have considered and adumbrated the alternative of certificating it simply to Philadelphia and Washington.

The Board's opinion denying the petition for rehearing addressed to its De-cember 1 opinion acknowledged that it had looked at matters occurring after its original decision,[5] but said that Section 7(d) was not applicable to that procedure. "To hold otherwise would lead to the anomalous result that an agency must hold a hearing in order to decide whether a hearing is warranted. We cannot accept this construction of the law." While the Board to some measure thereafter reviewed Northeast's contentions in a broader sense than this ruling implies, this ruling evidences such an extraordinary and serious misconception of its duties, or powers, as to affect our entire approach to the balance of the Board's opinion.

Section 7(d) did not require a hearing "to decide whether a hearing is warranted." The Board might, or might not, the propriety of which would have depended upon other considerations, have decided to hold a hearing to assist it in making up its mind whether to reopen for full further hearings. Alternatively, the Board might have decided, whether properly or not would again have depended upon considerations quite apart from section 7(d), to consider nothing beyond the record as it originally existed. The Board rejected this last course, thereby escaping the criticism, legal or otherwise, that such a course might have evoked, and chose to look at some subsequent matters. It is to us crystal clear that as soon as it elected to look at such matters it could not pick and choose, at least to the extent of denying an objecting party the rights guaranteed, but by no means created, by section 7(d) to rebut not only those matters it looked to, but also the inferences which were sought to be drawn therefrom. Due process could permit no less.[6]

Next, the Board stated that Northeast was not really seeking to contradict or

4. 5 U.S.C. § 1006(d). "The transcript of testimony and exhibits, together with all papers and requests filed in the proceeding, shall constitute the exclusive record for decision * * *. Where any agency decision rests on official notice of a material fact not appearing in the evi-dence in the record, any party shall on timely request be afforded an opportunity to show the contrary."

5. See fn. 3, supra.

6. To take a simple hypothetical, if the Board were to say, we deny your peti-

explain, but was merely contending that the record was unduly stale. On that basis it proceeded to accept or assume the correctness of certain matters contained in what it termed Northeast's "offer of proof," but found these to require no change in its conclusions. Other matters indicated in the motion it disregarded. Specifically, it dismissed in a footnote Northeast's proffer of expert testimony by citing Market Street Railway Co. v. Railroad Commission, 1945, 324 U.S. 548, 560, 65 S.Ct. 770, 89 L.Ed. 1171. At the reference page the Court had made the following statement. "There is nothing to indicate that any consideration which could be advanced by an expert has not been advanced by the Company in argument and fully weighed." This does not appear to be the present situation.[7] And certainly if the Board's cryptic remarks meant that it would not believe expert testimony even if it added anything new, this was an inappropriate disposition. Hassan v. Middlesex County National Bank, 1 Cir., 1964, 333 F.2d 838, 841, cert. den. 379 U.S. 932, 85 S.Ct. 332, 13 L.Ed.2d 344.

Having opened the door to new data, the Board was obliged to take a full look. No useful purpose will be served in our discussing each aspect,[8] but we suggest that fairness may require that Northeast's opportunity to rebut and explain what the Board has already noticed should extend to as recent developments as may be available at the date of the hearing or submission.

Our action, however, is subject to one qualification. Northeast's petition for rehearing filed December 15, 1964 is in two parts. The second relates to a claim first made, apparently, after our prior remand, that if it could not be certificated to Florida, at least it would be in the public interest that it be certificated to Philadelphia and Washington, D.C. The Board says this claim comes too late. We believe we would be looking at the Board's recent opinions with a very jaundiced eye if we were to conclude that its decision in this respect was either based upon, or supplemented by, considerations not of record at the close of the prior proceedings. We deny the present motion insofar as it relates to that issue. We neither order nor preclude the Board's further receipt of evidence with respect to it. For a number of reasons, including the fact that we wish to avoid any constraint upon the court when it reaches the petitions for review on the merits, the denial of this portion of the motion is without prejudice.

An order will be entered remanding this cause to the Board for further proceedings consistent with this opinion, and in the meantime our jurisdiction will be retained.

---

tion because we note that you lost money in October, the petitioner must be afforded the opportunity to show not only that it did not lose money in October or that this was a bookkeeping matter read out of context, but also, for example, that it always lost money in October, so that the fact was of no significance, or that October proved to be the bottom of a curve and lost significance by virtue of subsequent events. If the Board opens the door it cannot look at one occupant of the room and then shut the door and draw conclusions as to the total assembly.

7. Moreover, Market Street Railway did not involve an attempt to offer expert testimony in rebuttal. The Court held only that a commission could reach a conclusion based on data which it was in a position to understand, without the aid of expert testimony interpreting it.

8. One example, however, might be mentioned. We have already adverted to the Board's December 1 treatment of Northeast's contentions as to the depressing effects of its temporary certificate, and of these proceedings. In its March 5 opinion the Board justifies its refusal to receive evidence rebutting its confirmation of those conclusions by matters occurring after its initial decision by referring to the fact that it had "already recognized that the temporary nature of the certificate may well have had some adverse effect upon it" (but had dismissed it as insignificant).