NORTHEAST AIRLINES, INC.,
Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent.

MASTER EXECUTIVE COUNCIL OF PI-
LOTS OF NORTHEAST AIRLINES,
INC., Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent.

INTERNATIONAL ASSOCIATION OF
MACHINISTS, Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent.

Nos. 6220, 6233, 6445, 6506, 6507, 6517.

United States Court of Appeals
First Circuit.

May 11, 1965.

On Motions for Stay May 19, 1965.

Before ALDRICH, Chief Judge, BREITENSTEIN,* Circuit Judge, and GIGNOUX, District Judge.

ALDRICH, Chief Judge.

▮ Following our decision of April 13, 1965, remanding to the Board to permit Northeast to offer further evidence in the light of the evidence which the Board had taken, or noticed, *sua sponte,* 1 Cir., 345 F.2d 484, the Board entered a new order. This April 26 order revoked all outstanding decisions of the Board, both with respect to Northeast and as to whether there should be three permanently certificated carriers on the Florida route, stating that it "reopened [the] proceeding for a complete review of the issues" and "to consider those issues afresh in the light of the most recent data."[1] It appropriately, Anchor Line, Ltd. v. Federal Maritime Commission, 1962, 112 U.S.App.D.C. 40, 299 F.2d 124, requested us to remand for that purpose, giving our assent, if we believe it neces-

sary, and, preferably, relinquishing our jurisdiction.

▮ There were pending on April 13 motions by Eastern and National to intervene. These we denied, *sub silentio,* to the extent that they applied to Northeast's limited petition to remand, so far as the formalities were concerned, but we did read and fully consider the extensive briefs which these carriers had filed on this issue before the Board, and which were in the record presented to us. It has been our position, which the Supreme Court has refused to disturb, cert. den. 376 U.S. 931, 84 S.Ct. 698, 11 L.Ed.2d 651 (1964), that so long as these carriers are precisely aligned with the Board, formal intervention is inappropriate. However, when the Board entered its April 26 order this alignment terminated. We accordingly entered an order to the effect that "without otherwise passing" on their motions to intervene, these carriers would be permitted to respond to the Board's present request.

Briefly, the positions of the various carriers[2] are as follows. Northeast wishes us to grant such leave as may be necessary, but requests that it be "without prejudice to the pending proceedings for judicial review" and that this court "retain its jurisdiction and merely stay the pending judicial review proceedings." Eastern asserts that it was aggrieved by our April 13 order, that it wishes to be permitted to intervene, that it intends to petition for certiorari, and that it desires a stay of all further proceedings (not the stay of "review proceedings" that Northeast wishes) pending the Supreme Court's determination thereof. National's position is somewhat the same as Eastern's, except that it is undecided as to whether it will apply for certiorari, and as to whether it wants a general stay.

* By designation.

1. The Board did not expressly state whether it would consider Northeast's alternative request to be certificated to ▮

Philadelphia and Washington, but nothing presently turns on this.

2. There are before us petitions on behalf of certain of Northeast's employees, but these raise no further matters.

**490**

■ Although National appears to feel otherwise, the Board's order goes beyond our April 13 order. Nonetheless, we do not consider the Board's order inappropriate, and if necessary for us to assent thereto, we do so. Furthermore, we think its action fully within the Board's discretion and not subject to review. We do not, however, wish to stand in the way of Eastern and National, if they wish to seek review, and their motions to intervene are for that purpose allowed. We state, however, that any delay in the Board's further procedure is to be in its discretion, and that if, in connection with any petition for certiorari, whether with respect to our decision of April 13, or to our present decision, the petitioners wish the Board's further proceedings to be stayed, they must apply first to the Board, and next to the Supreme Court or to a justice thereof. We would not ourselves overrule a decision on the part of the Board to proceed during the pendency of such petitions.

■ We now turn to the question whether our assent to the Board's order, and consequent remand, should be accompanied by a retention, or a relinquishment, of our jurisdiction. None of the reasons asserted for the retention of our jurisdiction seems sound. It is not for us to supervise the manner in which the Board is to take evidence or otherwise conduct itself. It is true that in connection with our original remand, 1 Cir., 331 F.2d 579, we retained jurisdiction. That order did not necessarily involve a full retrial. Furthermore, it was imposed upon, in a sense, an unwilling Board, which might, not necessarily improperly, adhere to some or all of the matters it had originally decided with a so-to-speak closed mind. The Board has now renounced any such approach and states that it wishes to reconsider the case *de novo*. We also, naturally, assume that it recognizes the obligation to continue Northeast's temporary operations pursuant to 5 U.S.C. §

1008(b).[3] We see neither the need, nor the basis, for us to retain jurisdiction.

An order will be entered, to take effect ten days after the date of this opinion, approving the order of the Board of April 26, 1965, remanding the cause to the Board, and relinquishing our jurisdiction.

Opinion of the Court

On Motions for Stay.
May 19, 1965

ALDRICH, Chief Judge.

■ In our opinion of May 11, 1965 accompanying our order of like date recited to become effective May 21, 1965, we stated that any request for a stay should be made to the Board, then to the Supreme Court or a justice thereof, and not to us. Nonetheless, National and Eastern, hereafter movants, now ask for a stay in order to perfect certain petitions for certiorari and until the petitions be disposed of, or, at the least, until June 2, 1965. Eastern adds that the petitions will be filed on May 19. Northeast responds to this request by saying *inter alia*, not without merit, that our order of May 11 permitting movants to intervene has not as of this date taken effect, and asking what is movants' standing to file petitions while the order is being stayed.

While this query might be thought technical, it does raise squarely a matter of some substance. Implicit, if not explicit, in movants' request is the assertion that while they intend to file a petition for certiorari to our order of April 13, 1965, they do not intend to file to our order of May 11. In our view this would be quite inappropriate. It was precisely to prevent piecemeal attacks that we suspended all of our May 11 order for ten days, not just part of it. National and Eastern become intervenors when that order ceases to be stayed. The case will then be ripe for them, as intervenors, to

3. If we have misconstrued the Board's position in any particular, it should

promptly file a motion for reconsideration of this opinion and decision.

seek review of our April 13 order and our May 11 order.

While, as we have said, the Board's order of April 26, to which we assented on May 11, may well have been as a result of our order of April 13, it was not dictated by it. Movants say that we should stay our May 11 order assenting to the Board's order of April 26 because it may make the order of April 13 moot if we do not. The shoe is on the other foot. Movants point to our language in permitting them to intervene to the effect that we did not want to impede their asserting their rights. We did not mean by this that we wished to deprive our order of whatever might be its legitimate effect. If our May 11 order makes our April 13 order moot, we do not wish to grant a stay in order to change it.

Furthermore, we do not want to stay our May 11 order for the purpose of permitting review of our April 13 order if our May 11 order is not also to be brought before the Court. Surely it would be inappropriate if a situation might arise whereby orders prior to our May 11 order were cut out from under and our order of May 11 relinquishing jurisdiction were left intact.

However, there is another, equally serious, consideration. The effect of staying our May 11 order would be to prevent the Board for some months from reopening the hearings, even if, in the Board's opinion, delay is contrary to the public interest. With all due respect, although National describes our April 13 order as novel, we have no such thought. Movants appear to suggest that we are undermining the principle of judicial notice. Parenthetically, it is not entirely clear that what the Board "noticed" was strictly by way of judicial notice. But even assuming that it was, we in no way attacked the principle of judicial notice. We held, rather, that it was not due process to take notice ex parte without opportunity to reply or rebut. This is not a case of taking notice of some simple inescapable fact like the calendar, but of evidence, by hypothesis incomplete, at least as to time, and in any event subject to explanation in terms of consequences.

It seems so clear to us that the Board's action of which we disapproved on April 13 was improper that we do not propose to suspend for a matter of months, against the will of the Board, its continued orderly procedure if, in its opinion, the public interest warrants a new review of the whole case. At the same time, since movants apparently misunderstood the meaning or effect of our May 11 order, and since the Supreme Court or a justice thereof, may disagree with this opinion, or may wish more time to consider it, we extend our May 11 order to become effective June 2, 1965.